[No. B191132. Second Dist., Div. Three. Nov. 28, 2006.]

WESLEY BARRETT ROSS, Plaintiff and Respondent, v.
THOMAS E. KISH, Defendant and Appellant.

## COUNSEL

Nemecek & Cole, Frank W. Nemecek, Ophir J. Bitton and Mark Schaeffer for Defendant and Appellant.

Koorenny & Teitelbaum, Mark K. Koorenny; Law Offices of Robert H. Pourvali and Robert H. Pourvali for Plaintiff and Respondent.

## OPINION

**KLEIN, P. J.**—Thomas E. Kish appeals the denial of a special motion to strike (Code Civ. Proc., § 425.16)[1] a cause of action for malicious prosecution filed against him by his former attorney, Wesley Barrett "Barry" Ross. We affirm.

### SUMMARY

Ross represented Kish in a real estate matter in which buyers of Kish's real property sought between $325,000 and $435,000 in damages from Kish and others. The matter was resolved at mediation with Kish contributing $25,000 toward a total settlement of $120,000. Ross thereafter sued Kish in small claims court for approximately $4,000 in unpaid legal fees. Kish responded by suing Ross in superior court for breach of contract and legal malpractice. However, Kish refused to be deposed and his lawsuit was dismissed as a discovery sanction. Ross then sued Kish for malicious prosecution.

Kish filed a special motion to strike Ross's lawsuit under section 425.16, subdivision (b)(1), the anti-SLAPP, (strategic lawsuit against public participation) statute which provides that a cause of action arising from constitutionally protected speech is subject to a special motion to strike unless the plaintiff establishes the probability of prevailing on the claim. (§ 425.16, subd. (b)(1).) It is settled that an action for malicious prosecution arises from

---

[1] Subsequent unspecified statutory references are to the Code of Civil Procedure.

protected speech. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735 [3 Cal.Rptr.3d 636, 74 P.3d 737].) Thus, the only issue presented is whether Ross can demonstrate a probability of prevailing on the malicious prosecution action. In order for Ross to prove malicious prosecution, he must show a termination of Kish's lawsuit in Ross's favor, lack of probable cause in bringing or continuing to prosecute the lawsuit and malice. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965, 970 [12 Cal.Rptr.3d 54, 87 P.3d 802].) Kish asserts Ross cannot show a favorable termination of the lawsuit for breach of contract and legal malpractice primarily because the dismissal as a sanction for discovery violations does not reflect on the merits.

■ We conclude Kish's refusal to be deposed reasonably may be construed as a concession his claims for breach of contract and legal malpractice lacked merit. Consequently, the dismissal reflected adversely on the merits of the case and constituted a favorable termination for the purpose of initiating a claim for malicious prosecution. We further conclude Ross demonstrated that a reasonable trier of fact could find both of the other elements of malicious prosecution, lack of probable cause and malice. Because Ross produced evidence sufficient to establish a probability of prevailing on his claim for malicious prosecution, we affirm the denial of Kish's special motion to strike that cause of action.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.   *Resolution of the real estate matter and Ross's suit for unpaid fees.*

Kish sold a residence in San Diego in February 2002 for $910,000. Ten months after the sale, the buyers found a waterborne fungus, poria incrassata, had damaged the home. The buyers sought damages of $325,000 to $435,000 from Kish, the realtor, an exterminator and a home inspector. The buyers alleged Kish falsely represented there had been no prior water damage to the home when, in fact, Kish personally had filed two claims with his homeowner's insurance carrier for water damage in 1999. Kish hired Ross to represent him at a mediation of the buyers' claim and paid Ross $12,000 in fees prior to the mediation. The dispute was resolved at the mediation with Kish voluntarily contributing $25,000 toward a $120,000 settlement.

Ross subsequently sued Kish in small claims court for unpaid legal fees and costs incurred in the real estate matter in the amount of $4,099.29.

### 2.   *Kish sues Ross for breach of contract and legal malpractice.*

After Ross filed the small claims action, Kish, acting in propria persona, sued Ross for breach of contract and legal malpractice alleging Ross orally

promised the fees in the real estate matter would not exceed $5,000. Kish alleged he paid Ross $5,000 and, on the eve of the mediation, Ross demanded an additional $7,000, which Kish also paid. Kish claimed Ross was ill prepared for the mediation in that he failed to file a brief, failed to retain an expert in time for the hearing and failed to seek a defense under Kish's homeowner's policy. Ross dismissed the small claims action and filed a cross-complaint for the unpaid fees in Kish's breach of contract and legal malpractice case.

When Ross noticed Kish's deposition, Kish requested a continuance but failed to provide an alternate date. Ross sought an order to compel the deposition and, on May 6, 2005, the trial court granted the request and ordered Kish to pay monetary sanctions. Kish refused to be deposed, assertedly on the advice of New York Attorney Jeremiah Sheehan, until Sheehan had been admitted *pro hac vice* to represent Kish. Twice Ross successfully opposed Sheehan's motions to be admitted in this case.

Ross opposed Sheehan's first request for admission *pro hac vice*, heard on May 20, 2005, because Sheehan had not associated an active member of the California State Bar and the notice of the motion was defective. Ross also alleged an order granting the motion would reward Sheehan's unauthorized practice of law in that he previously had represented himself as Kish's attorney at the hearing on Ross's demurrer to Kish's first amended complaint. Sheehan also filed a settlement memorandum and checked in with the clerk at a settlement conference as counsel for Kish. Ross alleged that although Judge Charles Stoll admonished Sheehan regarding the unauthorized practice of law at the settlement hearing, Sheehan subsequently engaged in numerous acts of unauthorized practice of law.

The trial court denied Sheehan's request for admission *pro hac vice* on the grounds the motion lacked adequate notice, Sheehan failed to associate local counsel of record and a search of the records of the New York State Bar Association revealed Sheehan's registration status was delinquent and thus he was not an attorney in good standing in New York.

When Sheehan paid his dues, he sought reconsideration. Ross opposed this motion on the additional ground that Sheehan was, in fact, a resident of California. Ross asserted Sheehan and Kish were codefendants in a boundary dispute involving the residence they shared in California.

On June 24, 2005, the trial court again denied the motion. That same date, the trial court granted Ross's request for discovery sanctions, ordered Kish to appear immediately for his deposition and warned that failure to comply would result in dismissal.

On July 5, 2005, Ross filed a request for dismissal as a terminating sanction for Kish's refusal to comply with the previous order for his deposition. Kish failed to oppose the request and failed to appear at the hearing on July 29, 2005. The trial court found "[t]here are repeated failures to comply with . . . Court orders regarding discovery. Since no opposition papers were filed, there is no showing that the Plaintiff intends to comply with his discovery obligations. In light of this lack of showing that the Plaintiff will comply with discovery, no sanctions less than terminating sanctions appear appropriate."

### 3. *Ross sues Kish for malicious prosecution and abuse of process; Kish's special motion to strike.*

Following dismissal of the breach of contract and legal malpractice action, Ross sued Kish for malicious prosecution and abuse of process, alleging Kish's lawsuit had been filed to obtain leverage against Ross in the claim for unpaid fees.

Kish filed a special motion to strike Ross's complaint for malicious prosecution and abuse of process. (§ 425.16.) Kish alleged Ross could not demonstrate a favorable termination of Kish's lawsuit or that it had been instituted with malice and without probable cause. In support of the motion, Kish declared that, "[p]rior to the small claims trial taking place, I told one of my skin care clients, John Bartholomay . . . , a Massachusetts lawyer, of the circumstances surrounding the [real estate matter] and the small claims case against me [for unpaid legal fees]. Mr. Bartholomay advised me that I had a valid legal malpractice claim against Ross." Kish further declared he and Sheehan were "involved in a personal relationship" from June of 2004 through August of 2005. During that time, Sheehan provided Kish "legal services as part of a living agreement" between them. Kish averred he instituted the legal malpractice action against Ross "at the direction, advice and insistence" of Sheehan. Kish asserted that, "[f]rom the advice I received from SHEEHAN and from Mr. Bartholomay I thought I had a good case." Further, Sheehan advised Kish not to appear for his deposition until Sheehan had been admitted *pro hac vice.*

In opposition to the special motion to strike, Ross declared: "It was undisputed [at the mediation of the real estate matter] . . . that Kish failed to disclose to the buyer of his property the prior insurance claims or water intrusions that precipitated those insurance claims. Moreover, the buyer's claim in the [real estate matter] was bolstered by evidence of a C.L.U.E. (Comprehensive Loss Underwriting Exchange) Report obtained by the buyer's counsel . . . prior to making a claim against Kish, which report showed two (2) prior insurance claims for water intrusion in 1999 by Kish. [Citation.] . . . [¶] On April 2, 2003, Kish hired Ross to assist him in resolving the

case in mediation. Not knowing what it would cost to prepare for mediation or if mediation would even result in a resolution, and there being a possibility that the case could proceed to arbitration or litigation, there was never any discussion regarding a cap or limit on attorney fees. Kish executed a retainer agreement with Ross whereby Kish agreed to pay Ross $250 an hour." The retainer agreement estimated Ross's fee for handling the real estate matter would be "$3,500 plus through mediation only."

With respect to the merits of the legal malpractice claim, Ross declared that "[w]ith Kish's full knowledge, consent and agreement to fund," he hired experts to evaluate the buyers' claim. Specifically, Ross hired Dan Baxter of Environmental Analysis Associates, Inc., an expert in mold and fungus, Gary Dresser of Harbor Pest Control, Inc., to identify and evaluate the extent of the poria incrassata, and Bob Zoller of South Pacific Construction, Inc., a licensed general building contractor, to estimate the cost of repairs. Ross further declared that on May 28, 2003, Ross attended an inspection of the property with the experts. Although Kish was invited to attend the inspection, he chose not to. Following the inspection, the experts issued reports of their findings, copies of which were provided to Kish on June 14, 2003.

Ross evaluated the expert opinions and concluded they would be detrimental to Kish. Ross declared: "Such expert evidence could have been used against KISH in the mediation rather than to his benefit. . . . I decided it was in KISH'S best interests not to present any expert evidence at the mediation; KISH and I discussed this strategy prior to the mediation and KISH agreed." Ross further declared that in a telephone conversation on or about July 8, 2003, Kish told Ross he wanted the case settled at mediation.

With respect to Kish's claim Ross committed legal malpractice in not pursuing a declaratory relief action against Kish's homeowner's insurance carrier, Ross declared he was not hired to pursue such a claim and the retainer agreement reflects he was hired to handle a claim against Kish by the buyers of his real property. Additionally, Kish filed his own insurance claim on July 7, 2003, which was denied.

Regarding the failure to file a mediation brief, Ross declared such briefs are not mandatory and Ross determined it would be more effective to discuss the facts of the case, as well as Kish's contentions and available defenses, in a telephone conference with the mediator prior to the mediation. Ross thereafter gave an effective oral presentation that included exhibits at a 10-hour mediation on July 14, 2003, in San Diego, California. The mediation resulted in "a negotiated settlement of $120,000 payable to the buyers of Kish's San Diego property, with Kish agreeing to pay a mere $25,000."

"Prior to the settlement, Ross discussed its terms and effect with Kish and Kish stated to Ross that he understood the terms of the agreement and that he agreed to it. At the conclusion of the mediation, Kish expressed to Ross his relief that the matter had been settled, and how happy he was with the result. He thanked Ross for getting him off so incredibly cheaply."

Ross thereafter sued Kish in small claims court for legal fees and costs incurred in the real estate matter in the amount of $4,099.29, which included $1,410 paid to one of the experts and $1,105.83, which represented Kish's share of the mediator's fee.

Ross declared that, in response to the small claims action for unpaid fees and costs, "Kish filed the retaliatory Legal Malpractice Action. [Fn. omitted.] Kish's Legal Malpractice Action resulted in a judgment being entered in Ross'[s] favor following the Court's dismissal of Kish's Complaint . . . and after an evidentiary hearing on Ross's Cross-Complaint [for unpaid legal fees]. [Citation.]"

The trial court granted Kish's special motion to strike the abuse of process claim but denied the motion as to the malicious prosecution claim, thereby permitting that cause of action against Kish to proceed. The trial court found there was evidence which, if credited by the finder of fact, could establish each element of the malicious prosecution claim. Kish appeals this ruling.[2]

## CONTENTIONS

Kish contends the special motion to strike should have been granted with respect to the malicious prosecution cause of action because Ross cannot demonstrate any of the three elements of malicious prosecution. Specifically, Kish claims Ross cannot show a favorable termination of Kish's lawsuit for breach of contract and legal malpractice because the case was dismissed as a sanction for discovery violations. Kish further asserts Ross cannot demonstrate the lawsuit was brought without probable cause because Sheehan and Bartholomay advised Kish the case had merit and the action survived Ross's demurrer. Finally, Kish claims Ross cannot show the lawsuit was initiated with malice.

## DISCUSSION

1. *Legal principles applicable to a special motion to strike.*

Section 425.16, subdivision (b)(1), provides that a cause of action arising from a constitutionally protected right of free speech is subject to a

---

[2] Section 425.16, subdivision (i), provides for an immediate appeal from an "order granting or denying a special motion to strike . . . ."

special motion to strike unless the plaintiff establishes the probability he or she will prevail on the claim. (§ 425.16, subd. (b)(1).) In ruling on such a motion, the trial court must first determine whether the defendant has met the burden to show the activity underlying the cause of action is constitutionally protected. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) If the defendant establishes this, the burden shifts to the plaintiff to show a probability of prevailing on the cause of action. (*Ibid.*) It is settled that a claim for malicious prosecution is subject to a special motion to strike under section 425.16. (*Jarrow Formulas, Inc. v. LaMarche, supra,* 31 Cal.4th at p. 735; *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087 [114 Cal.Rptr.2d 825].) Consequently, the only issue to be determined on this appeal is whether Ross carried his burden to show a probability of prevailing at trial. (§ 425.16, subd. (b)(1).)

■ In ruling on a special motion to strike, "the court does not weigh the evidence or make credibility determinations. [Citations.]" (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 906 [120 Cal.Rptr.2d 576].) Rather, once the plaintiff makes a prima facie showing of facts which would support a judgment in his or her favor, the court will "consider[] the defendant's opposing evidence, but only to determine if it defeats the plaintiff's showing as a matter of law. [Citation.]" (*Ibid.*) The process the court uses in determining whether the plaintiff has shown a probability of prevailing on the merits is similar to the process used in determining motions for nonsuit, directed verdict or summary judgment. (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 672 [43 Cal.Rptr.3d 148]; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1010 [113 Cal.Rptr.2d 625]; *Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 907 [84 Cal.Rptr.2d 303].) "[I]n order to establish the requisite probability of prevailing [citation], the plaintiff need only have ' "stated and substantiated a legally sufficient claim." ' [Citations.] 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' [Citations.]" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88–89 [124 Cal.Rptr.2d 530, 52 P.3d 703].) If the plaintiff meets its burden the motion must be denied. (*Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1189 [121 Cal.Rptr.2d 794].)

We review de novo a trial court's ruling on a motion to strike under section 425.16 by " 'conducting an independent review of the entire record. [Citations.]' " (*Paulus v. Bob Lynch Ford, Inc., supra,* 139 Cal.App.4th at p. 672; See *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 [12 Cal.Rptr.3d 786]; *ComputerXpress, Inc. v. Jackson, supra,* 93 Cal.App.4th at p. 999.)

## 2. *Ross has shown a probability of prevailing on his malicious prosecution action.*

In order for Ross to prove that Kish's lawsuit for breach of contract and legal malpractice action constituted malicious prosecution, Ross must show a termination of the lawsuit in Ross's favor, lack of probable cause in bringing or continuing to prosecute the action and malice. (*Zamos v. Stroud, supra,* 32 Cal.4th at pp. 965, 970.) We examine each of these elements in turn.

### a. *Favorable termination.*

The favorable termination element of a malicious prosecution action is established by showing that termination of the underlying lawsuit "reflect[ed] on the merits of the action and the plaintiff's innocence of the misconduct alleged. [Citations.]" (*Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1149 [85 Cal.Rptr.2d 726].) "[W]hen the underlying action is terminated in some manner other than by a judgment on the merits, the court examines the record 'to see if the disposition reflects the opinion of the court or the prosecuting party that the action would not succeed.' " (*Wilshire-Doheny Associates, Ltd. v. Shapiro* (2000) 83 Cal.App.4th 1380, 1391 [100 Cal.Rptr.2d 478], quoting *Sierra Club Foundation v. Graham, supra,* at p. 1149; see *Eells v. Rosenblum* (1995) 36 Cal.App.4th 1848, 1855 [43 Cal.Rptr.2d 323]; *Pender v. Radin* (1994) 23 Cal.App.4th 1807, 1814 [29 Cal.Rptr.2d 36].) Should a conflict arise as to the circumstances of the termination, the determination of the reasons underlying the dismissal is a question of fact. (*Fuentes v. Berry* (1995) 38 Cal.App.4th 1800, 1808 [45 Cal.Rptr.2d 848].)

Kish contends the underlying action was not terminated in Ross's favor because it was dismissed for failure to comply with discovery orders and thus does not reflect on the merits of the action. Ross responds the circumstances surrounding the dismissal of the case indicate a concession on the part of Kish that the claim lacked merit and thus is the equivalent of a failure to prosecute, which constitutes a favorable termination. (*Minasian v. Sapse* (1978) 80 Cal.App.3d 823, 827–828 [145 Cal.Rptr. 829].)

It appears Ross has the better argument. The evidence submitted by Ross in opposition to the special motion to strike permitted the reasonable inference that Kish's allegations of breach of contract and legal malpractice were groundless.

Kish's claim for breach of contract was based on Kish's assertion that Ross orally promised the fees in the real estate matter would not exceed $5,000. However, this claim is directly contradicted by the written retainer agreement

between Kish and Ross, which stated Ross would charge Kish $250 per hour and estimated the total fee for handling the real estate matter at "$3500 plus through mediation." The glaring inconsistency between Kish's claim and the written retainer agreement suggests Ross did not orally promise the fee for handling the real estate matter would not exceed $5,000. Also, given that the real estate matter might not have settled at mediation, attorneys fees far in excess of $5,000 reasonably would be anticipated had the matter proceeded to litigation. Thus, the claim that Ross orally promised the fee for handling the real estate matter would not exceed $5,000 was not credible.

Kish's claim for legal malpractice fares no better. This claim is based on Kish's allegation Ross was ill prepared for the mediation in that he failed to retain experts in time for the hearing and failed to file a brief. Kish also complained that Ross failed to seek a defense under Kish's homeowner's policy. However, Ross refuted Kish's claim he failed to obtain expert opinions in the real estate matter by declaring he hired three experts and obtained a report from each. Further, Kish was aware of the retention of these experts, consented to their hiring and received a copy of their reports. Ross explained he did not present the opinions of the experts because they would have been harmful to Kish's case. Ross also averred he discussed this strategy with Kish and Kish agreed with it. Regarding the failure to file a mediation brief, Ross declared such briefs are not mandatory and he instead made an oral presentation in advance of the mediation, which fully advised the mediator of Kish's view of the dispute.

With respect to Kish's assertion Ross should have filed a declaratory relief action to obtain a defense under Kish's homeowner's policy, the retainer agreement makes no mention of a declaratory relief action or insurance claim but indicates Kish retained Ross to defend a claim by the buyers of Kish's real property. In any event, according to Ross's declaration, Kish filed his own insurance claim which was denied. Moreover, Kish's claim he hired Ross to pursue a declaratory relief action, in addition to handling the mediation of the real estate matter, is undermined by Kish's assertion Ross orally promised the fees would not exceed $5,000.

Further reflecting the lack of merit in Kish's claim of legal malpractice is the result of the mediation. The overall settlement amount of $120,000 was low compared to the $325,000 to $435,000 claim against Kish, and Kish contributed only $25,000 toward the settlement. Also, Kish voluntarily participated in the settlement. These facts suggest Kish could not prevail on a claim against Ross for legal malpractice in that he cannot show he would have obtained a more favorable outcome but for Ross's alleged errors or omissions. (*Marshak v. Ballesteros* (1999) 72 Cal.App.4th 1514, 1518 [86 Cal.Rptr.2d 1]; *Thompson v. Halvonik* (1995) 36 Cal.App.4th 657, 661–662 [43 Cal.Rptr.2d 142].)

Regarding Kish's assertion the dismissal of his lawsuit did not reflect on the merits because he relied on the advice of Sheehan in refusing to attend the deposition, a reasonable fact finder could reject this defense given the personal relationship between Sheehan and Kish. Moreover, attendance at a deposition is a matter exclusively within Kish's control. The record suggests Kish was a relatively sophisticated litigant, given that he appeared in propria persona in the lawsuit against Ross and he was involved in other lawsuits. Additionally, Kish was familiar with the facts of the real estate matter and thus was aware the claims against Ross for breach of contract and legal malpractice were not tenable.

Given these circumstances, it is reasonable to conclude Kish's refusal to submit to a deposition was a concession the claims for breach of contract and legal malpractice lacked merit. In other words, Kish's conduct suggests Kish knew Ross did not commit malpractice or breach of contract in handling the real estate matter. Thus, the dismissal of Kish's lawsuit for refusing to be deposed, like the dismissal for failure to prosecute in *Minasian v. Sapse, supra*, 80 Cal.App.3d 823, reflects adversely on the merits of the action based on the natural assumption that one does not simply abandon a meritorious action once instituted. Consequently, the dismissal must be seen as a termination favorable to Ross.

Kish argues *Minasian v. Sapse, supra*, 80 Cal.App.3d at page 828, is inapplicable because Kish actively pursued the claim against Ross in that he and Sheehan communicated with Ross's counsel, Kish answered interrogatories, Sheehan attempted to represent Kish at a settlement conference, Kish successfully opposed Ross's demurrer, Sheehan sought to appear *pro hac vice* to represent Kish and Kish briefly retained two different attorneys to represent him in the action against Ross.[3]

However, notwithstanding Kish's participation in the lawsuit, he defied discovery orders and failed to appear for his deposition, failed to make any showing he would comply in the future, failed to appear at the motion for terminating sanctions and failed to file any opposition to the motion. Although Kish had counsel of record at the time of termination, Kish failed to seek reconsideration or appeal the ruling. Thus, the factual distinctions between this case and *Minasian* do not prevent application of the reasonable inference that one does not abandon a meritorious cause of action.

Kish claims several published appellate opinions mandate a finding there was no favorable termination in this case, namely *Zeavin v. Lee* (1982) 136

---

[3] Ruth Phelps of Pasadena substituted into Kish's legal malpractice case on June 22, 2005, and substituted out two days later. On July 28, 2005, Jeffrey J. Merrick of Indian Wells substituted into the case and thereafter failed to take any action on Kish's behalf. The action was dismissed the following day pursuant to the terminating sanction.

Cal.App.3d 766 [186 Cal.Rptr. 545], *De La Pena v. Wolfe* (1986) 177 Cal.App.3d 481, 484–485 [223 Cal.Rptr. 325], and *Pattiz v. Minye* (1998) 61 Cal.App.4th 822 [71 Cal.Rptr.2d 802]. However, these cases are distinguishable.

In *Zeavin v. Lee, supra,* 136 Cal.App.3d 766, the underlying action was dismissed because the plaintiff refused to answer discovery or cooperate with her lawyer. *Zeavin* held dismissal of the action based on the plaintiff's failure to respond to discovery was not a favorable termination as to the plaintiff's attorney. (*Id.* at p. 771.) *Zeavin* noted, "[i]t would be beyond law or reason to conclude that an attorney who in good faith files and diligently prosecutes an action could later be held liable for malicious prosecution solely because that attorney's client later unilaterally, and for reasons known only to herself, refuses to make discovery." (*Id.* at p. 772.)

In *De La Pena,* a similar situation occurred. *De La Pena* held a concession by an attorney's client that a prior suit lacked merit was not binding on an attorney who substituted into the case after the plaintiff's motion to dismiss had been granted. (*De La Pena v. Wolfe, supra,* 177 Cal.App.3d at pp. 484–485.)

In *Pattiz v. Minye, supra,* 61 Cal.App.4th 822, the plaintiff's daughter refused to cooperate in discovery and the case was dismissed. *Pattiz* found the dismissal was not sufficient to support a malicious prosecution cause of action because the failure of the plaintiff's daughter could not be imputed to the plaintiff. (*Id.* at p. 828.)

In each case, the court refused to impute the conduct of a plaintiff in the underlying lawsuit, or a third party associated with the plaintiff, to the defendant in the malicious prosecution action. Nonetheless, *Zeavin* observed, "it may sometimes be proper to hold that a prior action was unfavorably terminated against a party solely because of her conduct in refusing to cooperate or make discovery or by reason of her unilateral abandonment of that action." (*Zeavin v. Lee, supra,* 136 Cal.App.3d at p. 773.)

It appears this is such a case. On this record, a reasonable fact finder could infer Kish's refusal to be deposed constituted an acknowledgment that his claims for breach of contract and legal malpractice lacked merit.

Additionally, after Kish was dismissed from the lawsuit, the trial court conducted an evidentiary hearing on Ross's cross-complaint for unpaid legal fees, at which it received evidence concerning the nature of Ross's representation of Kish and the quality of work performed and thereafter awarded judgment in Ross's favor. This judgment reflects adversely on the merits of

Kish's lawsuit in that the trial court could not have ruled in Ross's favor on the cross-complaint for unpaid legal fees if Ross had committed malpractice as Kish alleged. (*Lumpkin v. Friedman* (1982) 131 Cal.App.3d 450, 455–456 [182 Cal.Rptr. 378] [a finding in favor of a party whose opponent has been precluded from presenting evidence at trial is a favorable termination for the purpose of maintaining a malicious prosecution action].)

Thus, the record provides abundant support for the proposition that Ross carried his burden of proof with respect to the favorable termination element of the legal malpractice action.

### b. *Lack of probable cause.*

■ To make a prima facie case of lack of probable cause, Ross must show no reasonable attorney would have thought Kish's lawsuit was tenable in light of the facts known to Kish at the time the suit was filed. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 817, 822, fn. 6 [123 Cal.Rptr.2d 19, 50 P.3d 733]; *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 885–886 [254 Cal.Rptr. 336, 765 P.2d 498]; *Swat-Fame, Inc. v. Goldstein* (2002) 101 Cal.App.4th 613, 624 [124 Cal.Rptr.2d 556], disapproved on another point in *Zamos v. Stroud, supra*, 32 Cal.4th at p. 973.) Where there is no dispute as to the facts upon which an attorney acted in filing the prior action, the question of whether there was probable cause to institute that action is purely legal. (*Sheldon Appel Co., supra*, at pp. 868, 881; *Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 496 [78 Cal.Rptr.2d 142].) If there is a dispute as to such facts, that dispute must be resolved by the trier of fact before the objective standard can be applied by the court. (*Sheldon Appel Co., supra*, at p. 881; *Downey Venture v. LMI Ins. Co., supra*, at p. 496, fn. 25.)

As discussed in the preceding section on favorable termination, Ross produced evidence in opposition to Kish's motion to strike that showed Kish's lawsuit for breach of contract and legal malpractice lacked merit. It follows that no reasonable attorney would have concluded Kish had a valid claim against Ross. Thus, Kish's lawsuit was filed without probable cause.

Kish seeks to avoid this conclusion by arguing two attorneys, Sheehan and Bartholomay, advised him he had a valid claim against Ross. Kish claims reliance on the advice of counsel customarily establishes probable cause. (*Pond v. Insurance Co. of North America* (1984) 151 Cal.App.3d 280, 288 [198 Cal.Rptr. 517]; *DeRosa v. Transamerica Title Ins. Co.* (1989) 213 Cal.App.3d 1390, 1397–1398 [262 Cal.Rptr. 370].)

■ However, for this defense to be valid, Kish had to have sought the attorney's advice in good faith and disclosed all relevant facts to counsel.

(*Lucchesi v. Giannini & Uniack* (1984) 158 Cal.App.3d 777, 788 [205 Cal.Rptr. 62], disapproved on another ground in *Wilson v. Parker, Covert & Chidester, supra,* 28 Cal.4th at p. 824.) Although out-of-state counsel may be relied upon to establish this defense (see *Rodrigues v. Superior Court* (2005) 127 Cal.App.4th 1027, 1037 [26 Cal.Rptr.3d 194] [a foreign attorney properly may submit a declaration in support of request for relief from default under § 473, subd. (b)]), Kish's personal relationship with Sheehan demonstrates a bias that renders Kish's claimed reliance on Sheehan's opinion suspect. Also, the record discloses that Bartholomay was a skin care client of Kish's. A trier of fact reasonably could conclude Kish did not disclose all relevant facts to Bartholomay and that Kish did not seek the opinion of either attorney in good faith. Consequently, the "advice of counsel" defense does not, as a matter of law, defeat Ross's prima facie showing Kish instituted the action for legal malpractice and breach of contract without probable cause. (*Wilson v. Parker, Covert & Chidester, supra,* at p. 821; *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 676 [35 Cal.Rptr.3d 31].)

Kish further asserts the fact two different attorneys, Ruth Phelps and Jeffrey J. Merrick, represented Kish in the lawsuit implies it was legally tenable. He claims the Rules of Professional Conduct permit attorneys to pursue actions only if probable cause exists. Thus, the appearance of these two attorneys demonstrated there was probable cause to support the lawsuit. However, as noted in footnote 2, *ante,* Ruth Phelps of Pasadena represented Kish for only two days and Jeffrey J. Merrick substituted into the case on July 28, 2005, but failed to take any action on Kish's behalf. Nothing in the conduct of these attorneys suggests Kish's case had merit.

Kish also argues the successful defense of the first amended complaint against Ross's demurrer established the case was filed with probable cause. (*Swat-Fame, Inc. v. Goldstein, supra,* 101 Cal.App.4th at pp. 625–626.) However, *Swat-Fame* is distinguishable. *Swat-Fame* addressed whether a false statement was actionable as fraud or merely constituted a statement of opinion. In overruling a demurrer to the complaint, the trial court found the allegations of the complaint were true to the best of the attorneys' knowledge at the time the complaint was filed. Thus, the attorneys had probable cause to bring the claim for fraud. No similar finding of fact was made in connection with the order overruling Ross's demurrer. Thus, Kish's ability to plead causes of action for breach of contract and legal malpractice that survived Ross's demurrer does not indicate he had probable cause to file the action in the first instance.

Based on all these factors, we conclude no reasonable attorney would have pursued a claim for breach of contract or legal malpractice against Ross.

Thus, the record reflects Ross made a showing of lack of probable cause sufficient to defeat Kish's special motion to strike.

### c. *Malice.*

" 'The "malice" element of the malicious prosecution tort relates to the subjective intent or purpose with which the defendant acted in initiating the prior action . . . .' 'The malice required in an action for malicious prosecution is not limited to actual hostility or ill will toward [the] plaintiff but exists when the proceedings are instituted primarily for an improper purpose. [Citations.]' [Citation.]" (*Swat-Fame, Inc. v. Goldstein, supra,* 101 Cal.App.4th at p. 633.) Although lack of probable cause alone does not automatically equate to a finding of malice, it is a factor that may be considered. (*Downey Venture v. LMI Ins. Co., supra,* 66 Cal.App.4th at pp. 498–499, fn. 29.) "[M]alice may still be inferred when a party knowingly brings an action without probable cause. [Citations.]" (*Swat-Fame, Inc. v. Goldstein, supra,* at p. 634, italics omitted.)

Kish argues he offered evidence indicating he did not sue Ross with hostility or ill will and Ross did not contradict this evidence. Instead, Ross merely speculated Kish filed the complaint for breach of contract and legal malpractice in retaliation for Ross's lawsuit for legal fees or to leverage a settlement of Ross's lawsuit. Kish also argues he participated in the litigation process prior to its dismissal, indicating it was not instituted with malice.

However, as previously intimated, the record in this case is sufficient to permit a reasonable trier of fact to infer Kish sued Ross in retaliation for Ross's attempt to recover unpaid fees and costs. We reach this conclusion because the evidence suggests Kish knew the claims for breach of contract and legal malpractice lacked factual and legal support and Kish complained about Ross's representation only after Ross filed a small claims action for unpaid fees. Thus, a trier of fact reasonably could infer Kish filed the action with malice.

### 3. *Conclusion.*

The record demonstrates Ross sustained his burden of proving a probability of prevailing on his claim for malicious prosecution. Consequently, the trial court properly denied Kish's special motion to strike that cause of action.

## DISPOSITION

The judgment is affirmed. Kish shall bear costs on appeal.

Croskey, J., and Aldrich, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 21, 2007, S148943.