Filed 9/16/20  Teren v. Abrolat CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| PAMELA TEREN et al., | B295021 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC713109) |
| v. | |
| NANCY ABROLAT, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Dennis Landin, Judge.  Affirmed.

EPPS & Coulson, Dawn M. Coulson and Kari A. Keidser for Defendant and Appellant

Sherman Law Corporation and Lisa Sherman for Plaintiffs and Respondents.

_____

For 12 years now, the parties in this case have been embroiled in an acrimonious dispute over the dissolution of their law partnership.  In the underlying case, Nancy Abrolat sued Pamela Teren for allegedly stealing partnership clients, but that case ended in terminating sanctions because Abrolat refused to sit for a second day of her deposition when ordered to do so. Abrolat appealed that ruling but dismissed her appeal at the 11th hour.  We found the appeal frivolous and imposed significant sanctions of over $160,000 on Abrolat for pursuing it.

The dispute perhaps could have ended there.  But now, Teren and her law corporation have sued Abrolat for malicious prosecution and abuse of process.  Only the malicious prosecution claim is at issue here.  Abrolat filed an anti-SLAPP motion to strike it.  (Code Civ. Proc., § 425.16; hereafter section 425.16.)  In opposition, Teren submitted a blanket request for judicial notice of over 4,000 pages of records in the underlying case and other related cases.  In response, Abrolat lodged nine identical blanket evidentiary objections to all 4,000-plus pages offered by Teren. The court denied the anti-SLAPP motion.

Neither party properly approached the evidentiary requirements for Abrolat's anti-SLAPP motion.  Teren's *en masse* request for judicial notice of thousands of court records did little to carry her burden to show that she had evidence to support her claims that would be *admissible* at trial, which is required to survive an anti-SLAPP motion.  For Abrolat's part, her blanket objections to the same thousands of pages did nothing to show that any particular document would be *inadmissible* at trial.

Ultimately, the trial court relied on only two documents to conclude Teren's malicious prosecution claim had minimal merit. Following the trial court's lead, we will do the same.  We agree

2

those two documents demonstrate Teren's claim has minimal merit, so we affirm. Given both parties' evidentiary failures, we deny Teren's motion for sanctions.

## BACKGROUND

The basic background facts are not disputed, so we take them from Teren's verified complaint and the trial court's order denying the anti-SLAPP motion.

Abrolat and Teren dissolved their law partnership in 2008. Abrolat sued Teren for breach of contract, fraud, and related claims, alleging Teren stole potential clients from her (the underlying case). Abrolat had also filed a lien on one of Teren's cases (referred to as the "Lefkir case"), which blocked Teren from receiving any portion of a $495,000 attorney's fee she earned from the resolution of the case. Abrolat also froze a $500,000 partnership fee paid on another case (the "DOE case"), which Teren alleged should have been split between them.

During discovery in the underlying case, Abrolat failed to appear for her second deposition and refused to comply with two court orders compelling her appearance. This resulted in the trial court issuing an order granting Teren's motion for terminating sanctions. In that order, the trial court found (1) Teren's counsel deposed Abrolat in a first session; (2) around the same time, Teren discovered evidence Abrolat had been "spying" on Teren's computer and filed a Second Amended Cross-Complaint alleging claims based on that spying; (3) Abrolat violated two court orders to appear for a second deposition or provide a doctor's note under the penalty of perjury excusing her absence; (4) Abrolat provided no admissible evidence to excuse her non-appearance; and (5) monetary and terminating sanctions were warranted.

3

At the hearing on the sanctions motion, the court noted the evidence "shows a pattern, practice of delay in this action on the part of plaintiffs, as well as the willful disobedience of this court's order, given the repeated failure to present admissible evidence showing that Nancy Abrolat suffers from . . . a serious medical condition that prevents her from sitting for deposition."  The court dismissed Abrolat's operative complaint with prejudice and entered default judgment in Teren's favor on her cross-complaint.

Abrolat moved for reconsideration of the default judgment, which the trial court denied.  The court found she failed to show excusable neglect, believing her behavior was "strategic from the beginning" and was "strategic now."[1]

Abrolat appealed the default judgment.  (*Abrolat v. Teren*, B260471.)  We did not resolve the merits because Abrolat dismissed the appeal before filing her reply brief, resulting in issuance of the remittitur.  We granted Teren's motion to recall the remittitur and imposed significant sanctions on Abrolat.  We called her dismissal of the appeal "part of her continued gamesmanship after she misled Teren into believing she would file a reply brief, only to then file a request for dismissal without notice."  We found "little question" her appeal "was frivolous because ' "any reasonable attorney would agree that th[is] appeal is totally and completely without merit." ' "

We also inferred Abrolat's true motive was delay: "[Abrolat] was subject to a substantial default judgment for the

---

[1]     Teren attached the transcripts from the hearings on the motion for terminating sanctions and motion for relief from default judgment as exhibits to her malicious prosecution complaint.

4

fees she continuously withheld from Teren, putting a serious financial strain on Teren. The longer the appeal remained open, the more serious the strain became and the greater the advantage to Abrolat. Any doubt about her motive was eliminated when she waited until the last possible moment and out of the blue to dismiss the appeal without even a hint of notice to Teren, thereby cutting off Teren's ability to file any sanctions motion."

We imposed $160,718.92 in sanctions on Abrolat, representing Teren's attorney's fees in litigating the appeal (with an offset for some fees already paid by Abrolat).[2]

Teren then filed the verified complaint at issue here alleging claims for malicious prosecution and abuse of process based on the underlying case. Abrolat demurred and filed an anti-SLAPP motion. The court sustained the demurrer for the abuse of process claim, but overruled the demurrer as to the malicious prosecution claim. It also denied Abrolat's anti-SLAPP motion as to the malicious prosecution claim.

In denying the anti-SLAPP motion, the court granted Teren's blanket request for judicial notice, which identified four "exhibits" that contained over 4,000 pages of records in the underlying case, the prior appeal, a related bankruptcy case, and the malicious prosecution case here.[3] Abrolat asserted nine identical blanket evidentiary objections to all 4,000-plus pages,

---

[2]     Teren attached a copy of our order in the underlying case as an exhibit to her malicious prosecution complaint.

[3]     The trial court also granted Abrolat's request for judicial notice of "various court filings," but the request is not in the record.

5

claiming every document lacked foundation and was inadmissible hearsay, incompetent, uncertified, and not subject to judicial notice.  The trial court declined to rule on the objections because they were not material to its ruling.

On the merits, the court held the malicious prosecution claim was subject to the anti-SLAPP statute, and Teren demonstrated a probability of prevailing.  As we discuss in more detail below, the court relied on only two documents in the record—the order imposing terminating sanctions in the underlying case; and a 2011 declaration from Laid Lefkir, who declared the fee agreement he signed with Teren's law firm after the parties' partnership dissolved was the only one he ever signed.

Abrolat appealed the denial of her anti-SLAPP motion.

## DISCUSSION

### I.    Standard of Review

" 'Resolution of an anti-SLAPP motion involves two steps.  First, the defendant must establish that the challenged claim arises from activity protected by section 425.16.  [Citation.]  If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success.' " (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940 (*Sweetwater*).)  We review de novo the denial of an anti-SLAPP motion.  (*Ibid.*)[4]

---

[4]    Teren argues Abrolat misstated the standard of review.  In Teren's view, our review is for abuse of discretion because Abrolat "focuses exclusively [on] the Trial Court's decision to overrule Abrolat's evidentiary objections."  True, Abrolat's opening brief focused on her evidentiary objections, but she also addressed the merits.  The trial court did not rule on Abrolat's

6

The parties do not dispute Abrolat's malicious prosecution claim is subject to the anti-SLAPP statute.  (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 215 (*Daniels*) ["every claim of malicious prosecution is a cause of action arising from protected activity"].)  Thus, we address only the second step.  To prevail on her malicious prosecution claim, Teren must show " ' "the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in [the plaintiff's] favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations]." ' " (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965, italics omitted.)

The analysis at the second step is " 'a "summary-judgment-like procedure."  [Citation.]  The court does not weigh evidence or resolve conflicting factual claims.  Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment.  It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.  [Citation.] "[C]aims with the requisite minimal merit may proceed." ' " (*Sweetwater, supra,* 6 Cal.5th at p. 940.)

## II.  Plaintiff's Evidentiary Burden to Show Probability of Success

Generally, "a plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon *competent admissible*

---

objections, and as we explain, they are forfeited for the lack of specificity.  Thus, our review is de novo, and Abrolat's recitation of the law was correct.

*evidence.' "* (*Sweetwater, supra,* 6 Cal.5th at p. 940, italics added.) "The anti-SLAPP statute describes what evidence a court may consider at the second step. It provides that '[i]n making its determination, the court shall consider the pleadings, and supporting and opposing *affidavits* stating the facts upon which the liability or defense is based.' ([Code Civ. Proc.,] § 425.16, subd. (b)(2), italics added.)" (*Id.* at p. 941.)

*Sweetwater* addressed two evidentiary issues: the form evidence must take in opposing an anti-SLAPP motion, and whether that evidence will be admissible at an eventual trial. (*Sweetwater, supra,* 6 Cal.5th at p. 937.) As to form, the court rejected the notion that affidavits and declarations signed under penalty of perjury were barred as inadmissible hearsay. The court explained, "[a]lthough affidavits and declarations constitute hearsay when offered for the truth of their content, section 425.16, subdivision (b)(2) permits their consideration in ruling on a pretrial anti-SLAPP motion. . . . These declarations may be considered, not because they satisfy some other hearsay exception, but because they qualify as declarations or their equivalent under [Code of Civil Procedure] section 2015.5,[5] and can be considered under section 425.16." (*Id.* at p. 942.) The court reached a similar conclusion for recorded testimony given under oath at a prior proceeding. (*Id.* at pp. 943–944.)

---

[5] Code of Civil Procedure section 2015.5 essentially provides that a declaration may serve as an alternative to an affidavit if it is "signed and recite[s] that the person making it certifies it to be true under penalty of perjury. The document must reflect the date and place of execution, if signed in California, or recite that it is executed 'under the laws of the State of California.' " (*Sweetwater, supra,* 6 Cal.5th at p. 941.)

On the issue of admissibility, the court held "evidence may be considered at the anti-SLAPP motion stage if it is reasonably possible the evidence set out in supporting affidavits, declarations or their equivalent will be admissible at trial." (*Sweetwater, supra,* 6 Cal.5th at p. 947.) In other words, "at the second stage of an anti-SLAPP hearing, the court may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial. Conversely, if the evidence relied upon *cannot* be admitted at trial, because it is categorically barred or undisputed factual circumstances show inadmissibility, the court may not consider it in the face of an objection. If an evidentiary objection is made, the plaintiff may attempt to cure the asserted defect or demonstrate the defect is curable." (*Id.* at p. 949.)

Applying *Sweetwater* in this case is complicated by the parties' problematic approaches to the evidence presented to the trial court. First, as noted, Teren attempted to carry her evidentiary burden by requesting judicial notice of the entire court file in the underlying case and related cases. On appeal, Teren cites hundreds of those pages as substantive proof of her version of the facts. Undoubtedly, some of those documents could be substantive proof under *Sweetwater* if they constitute prior recorded testimony under oath like declarations or deposition testimony. But she hasn't made that particularized showing. The trial court could properly take judicial notice of "[r]ecords of . . . any court of this state" (Evid. Code, § 452, subd. (d)), but it generally could not take judicial notice of the *truth* of statements in those records. (See, e.g., *Steed v. Department of Consumer Affairs* (2012) 204 Cal.App.4th 112, 120 (*Steed*).) Thus, the trial court's grant of blanket judicial notice established that thousands

9

of pages had been filed.  Without a more specific showing, it did not prove the facts contained in them.

For Abrolat's part, she asserted nine blanket evidentiary objections to Teren's 4,000-plus pages of judicially noticed court records, arguing they were all inadmissible hearsay, lacked foundation, were incompetent, were not certified, and were not subject to judicial notice.[6]  She did not single out any specific documents or explain why any particular document would be inadmissible at trial.  This made it impossible for the trial court to rule on her objections and for us to review any ruling.  We recognize Abrolat's responsibility for raising specific objections was complicated by Teren's blanket request for judicial notice.  Yet, Teren cited many specific pages throughout her opposition to Abrolat's anti-SLAPP motion.  Abrolat could have at least attempted to identify the most relevant documents and assert targeted objections for the trial court's review.  By failing to offer specific objections, she has forfeited those challenges.  (See *In re E.A.* (2012) 209 Cal.App.4th 787, 790 ["General objections are insufficient to preserve issues for review."].)

Helpfully, the trial court sidestepped both parties' failures.  It granted judicial notice of the entire underlying record but relied on only two documents—the order imposing terminating sanctions and a 2011 declaration from Laid Lefkir made under

---

[6]  In passing on appeal, Abrolat renews her argument that none of the judicially noticed documents were "certified copies" pursuant to rule 3.1306 of the California Rules of Court.  Rule 3.1306 contains no such requirement.

penalty of perjury—to deny the anti-SLAPP motion.[7]  We will do the same.  These two documents demonstrate the "minimal merit" for Teren's claim to proceed.[8]

## III.  Probability of Prevailing

Again, malicious prosecution requires proof of (1) a favorable termination; (2) a lack of probable cause; and (3) malice.  (*Zamos v. Stroud, supra,* 32 Cal.4th at p. 965.)  Abrolat does not address malice on appeal, so we focus on Teren's showing as to the first two elements.

When a case is terminated for discovery sanctions, that termination is favorable if it " 'reflect[s] on the merits of the case and the malicious prosecution plaintiff's innocence of the misconduct alleged in the underlying lawsuit.' " (*Daniels, supra,* 182 Cal.App.4th at p. 217.)  We must ask whether an inference can be drawn that the refusal to submit to discovery is "a concession the claims . . . lacked merit." (*Ross v. Kish* (2006) 145 Cal.App.4th 188, 200 (*Ross*).)  "Should a conflict arise as to the circumstances of the termination, the determination of the reasons underlying the dismissal is a question of fact." (*Id.* at p. 198.)

---

[7]  We don't know what the court meant when it declined to rule on Abrolat's objections because they were not "material" to the court's resolution of the anti-SLAPP motion.  The objections were at least potentially material since the court relied on two documents in Teren's request for judicial notice.  Again, however, Abrolat's failure to raise *specific* objections to these documents forfeited any evidentiary challenge to them at this stage.

[8]  For this reason, we need not address Abrolat's argument that Teren cannot rely on her verified complaint to demonstrate a probability of prevailing.

11

To find the underlying case was terminated in Teren's favor, the trial court relied on the order imposing terminating sanctions against Abrolat and dismissing her case. As noted above, the order contained findings Abrolat failed to sit for a second deposition despite two court orders to do so and failed to offer a valid doctor's note to excuse her failure. The order also found that refusal came after Teren discovered evidence Abrolat had been "spying" on Teren's computer and filed a Second Amended Cross-Complaint alleging claims based on that spying.

The trial court here explained these findings formed a "sufficient basis to infer a lack of evidence for Abrolat's claims," and provided "ample basis to infer that Abrolat's failure to comply with the discovery orders is susceptible to a concession that her claims lack evidence or are invalid. . . . As such, the dismissal of Abrolat's case qualifies as a termination in Teren's favor."

Abrolat argues the trial court could take judicial notice that findings were made in the terminating sanctions order but could not take judicial notice of their truth. (See *Steed, supra,* 204 Cal.App.4th at p. 120.) That is correct generally, but Abrolat does not—and could not—dispute the foundational facts contained in the order that led to dismissal. In fact, she presents those same facts in her opening brief on appeal. Specifically, there is no dispute she sat for one deposition, but did not sit for another, even after she was ordered to do so twice. There is no dispute she failed to provide a doctor's note under penalty of perjury as the court requested. There is also no dispute over the *timing* of her refusal to sit for her deposition, which came after Teren added claims to her cross-complaint alleging Abrolat was spying on her computer. Those basic matters were readily

12

verifiable from the underlying record, so they reasonably fell within the scope of judicial notice.  (See Evid. Code, § 452, subd. (h) [court may judicially notice "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy"]; *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882 ["The underlying theory of judicial notice is that the matter being judicially noticed is a law or fact that is *not reasonably subject to dispute*."].)

Abrolat could potentially dispute *why* she didn't sit for her deposition and whether her refusal was justified.  She could also argue against the *inference* that her failure reflected a belief her claims lacked merit.  But those are issues for the factfinder at a later stage.  For now, the findings in the sanctions order reflected undisputed events and could support an inference she refused to sit for her deposition because she believed her claims lacked merit.  If the factfinder were to draw that inference, the factfinder could conclude the underlying case was terminated in Teren's favor.

*Ross* and *Daniels* support this result.  Each case involved an anti-SLAPP motion to strike a malicious prosecution claim when the underlying case was terminated as a discovery sanction.  In *Ross*, the court held the defendant's refusal to sit for his deposition in the underlying case could reasonably be construed as a concession his claims lacked merit.  (*Ross, supra,* 145 Cal.App.4th at pp. 192, 200.)  The court examined the record and concluded the defendant's claims actually lacked merit, and the defendant was a "relatively sophisticated litigant" who was familiar with the relevant facts.  (*Id.* at p. 200.)  In *Daniels*, the

13

court found a prima facie showing of a favorable termination because "the record from the underlying action is devoid of any attempt during discovery to substantiate allegations in the complaint, and the court's dismissal is justified by the plaintiff's lack of evidence to submit the case to a jury at trial." (*Daniels, supra,* 182 Cal.App.4th at p. 219.)

As Abrolat points out, neither case is exactly on point. Unlike in *Daniels*, Abrolat participated in the underlying lawsuit, sat for one day of a deposition, and responded to some discovery. *Ross* is closer—like Abrolat, the *Ross* defendant responded to some discovery and participated in the underlying case. But unlike Abrolat, that defendant "failed to make any showing he would comply in the future, failed to appear at the motion for terminating sanctions and failed to file any opposition to the motion." (*Ross, supra,* 145 Cal.App.4th at p. 200). Here, Abrolat did oppose the sanctions motion, sought reconsideration of the sanctions order, and appealed. But Abrolat was an attorney, and a factfinder could infer she was motivated to pursue her case and fight dismissal not because she thought her claims were valid, but because she wanted to use the litigation to keep the financial pressure on Teren through delay. We inferred a similar motive of delay when we sanctioned Abrolat for pursuing a frivolous appeal.

Abrolat analogizes to *Pattiz v. Minye* (1998) 61 Cal.App.4th 822, but it is entirely distinguishable. The defendant's cross-complaint was dismissed as a sanction for her incomplete and disorderly document production as well as her daughter's failure to appear for a deposition; the defendant herself appeared for a deposition and participated in discovery. (*Id.* at p. 825.) The court held this was not a favorable termination on the merits

14

because the undisputed facts showed the defendant "did not abandon the action or refuse to cooperate in discovery. Moreover, it would be unfair to ascribe a lack of cooperation by [the defendant] to her daughter's act of refusing further deposition due to illness." (*Id.* at pp. 827–828.)

Here, the circumstances leading to the terminating sanctions order could very well support a reasonable inference Abrolat refused to sit for her deposition because she believed her claims lacked merit. As in *Ross* and *Daniels*, we are satisfied the terminating sanctions order meets the low bar to overcome Abrolat's anti-SLAPP motion.

Turning to probable cause, " '[t]he existence of probable cause is a question of law to be determined as an objective matter' [citation] by deciding whether ' " 'any reasonable attorney would agree' " ' that the prior action was ' " 'totally and completely without merit' " ' [citation]. ' "A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him." ' " (*Kinsella v. Kinsella* (2020) 45 Cal.App.5th 442, 455.) " 'When there is a dispute as to the state of the defendant's knowledge and the existence of probable cause turns on resolution of that dispute . . . the jury must resolve the threshold question of the defendant's factual knowledge or belief.' " (*Daniels, supra,* 182 Cal.App.4th at p. 223.)

For the probable cause element, the trial court considered a 2011 declaration from Teren's former client Laid Lefkir. Lefkir declared in pertinent part, " 'The fee agreement I signed with Teren Law Group on October 13, 2008, is the only fee agreement I have ever signed with any lawyer regarding my Claims. I never

retained Abrolat & Teren to represent me and never had any understanding that Abrolat & Teren represented me.' " The trial court relied on this declaration to find "Teren has created a triable issue as to whether Abrolat lacked an objectively reasonable basis for suing Teren for the proceeds from the Lefkir case."

Abrolat did not mention, let alone address, the Lefkir declaration in her opening brief on appeal. She only addressed it for the first time in her reply brief. She has forfeited any argument that the trial court improperly relied on it to find a lack of probable cause. (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1477–1478 [contentions first raised in reply brief are forfeited].)[9]

On the merits, the Lefkir declaration could support a lack of probable cause. First, we may consider the declaration under *Sweetwater*. Lefkir's testimony was limited to facts within his personal knowledge—he only ever signed one fee agreement and

---

[9] In her reply brief, Abrolat also argues Lefkir was only one client among several that formed the basis for her breach of fiduciary duty claim. Again, this argument is forfeited for raising it only in reply. She also has not developed this argument or cited authority to show how this would justify granting her anti-SLAPP motion. We note "a suit for malicious prosecution lies for bringing an action charging multiple grounds of liability when some but not all of those grounds were asserted with malice and without probable cause." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 671.) Likewise, "[w]here a complaint identifies a number of acts of alleged misconduct and theories of recovery, for purposes of reviewing an anti-SLAPP motion, it is sufficient to focus on just one." (*Golden State Seafood, Inc. v. Schloss* (2020) 53 Cal.App.5th 21, 32.)

16

it was with Teren after dissolution of the partnership.  He signed the declaration under penalty of perjury pursuant to the laws of California.  Under *Sweetwater*, his declaration is the equivalent of an affidavit under the anti-SLAPP statute, and Abrolat has pointed to no substantive categorical bar to his testimony.

If the factfinder were to credit Lefkir's testimony, that evidence could show Abrolat's claim to the Lefkir fees was meritless and no reasonable attorney would have pursued it.  The factual underpinning for Abrolat's complaint was the allegation Teren withheld fee awards in several partnership matters.  Lefkir's declaration demonstrated his case was *never* a partnership matter—he did not retain the partnership and only signed a fee agreement with Teren.  From his testimony, the factfinder could infer Abrolat knew she had no claim to the fees, so her complaint was baseless.  (Cf. *Greene v. Bank of America* (2013) 216 Cal.App.4th 454, 464 (*Greene*) [crediting plaintiff's denials that he threatened to blow up bank to draw inference bank employee knowingly made false police report].)

Abrolat argues the underlying case had merit because she filed a summary adjudication motion, her attorney thought her claims were tenable, and she retained an expert who declared Teren breached her fiduciary duties.  She also points out in her reply brief that Lefkir had no personal knowledge of any agreements between her and Teren or the distribution of client leads that came through partnership marketing efforts.  These points merely create a potential factual dispute.  At the anti-SLAPP stage, we must credit Lefkir's declaration, which was sufficient to show the minimal merit necessary on the lack of probable cause element.  (See *Greene, supra,* 216 Cal.App.4th at p. 465 [" 'When the evidence bearing on the question of probable

17

cause is in conflict, it is the province of the jury to determine whether facts exist which will warrant or reject an inference of probable cause.' "].)

As to the malice element, Abrolat has not addressed the trial court's finding the evidence supported an inference Abrolat acted with malice. We will not disturb the trial court's ruling. Teren has shown the minimal merit necessary to defeat Abrolat's anti-SLAPP motion.

## IV.    Sanctions Motion

We deny Teren's motion requesting that we impose sanctions on Abrolat for pursuing a frivolous appeal. Given Teren's problematic blanket request for judicial notice, Abrolat's appeal was not " 'totally and completely without merit.' " (*Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 32.) Our denial does not preclude Teren from seeking attorney's fees pursuant to Code of Civil Procedure section 425.16, subdivision (c)(1).

### DISPOSITION

The order is affirmed. Teren is entitled to costs on appeal.


BIGELOW, P. J.

We Concur:


GRIMES, J.                      SALTER, J.*

---

**\***     Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.