Filed 1/23/14  Mack v. Shannahan CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CARY MACK, Plaintiff and Respondent, v. WILLIAM P. SHANNAHAN et al., Defendants and Appellants. | D061871 (Super. Ct. No. 37-2011-00095853-CU-NP-CTL) |

APPEAL from orders of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Affirmed.

William P. Shannahan, in pro. per., for Defendants and Appellants William P. Shannahan and William P. Shannahan, Inc.

Schonfeld, Bertsche & Preciado, Corrine Bertsche, Cecilia Preciado and Alan H. Schonfeld for Defendants and Appellants Nicholas A. Boylan and Law Office of Nicholas A. Boylan.

English & Gloven, Donald A. English and Christy I. Yee for Plaintiff and Respondent.

Defendants and appellants Nicholas A. Boylan and his law firm, Law Offices of Nicholas A. Boylan, APC, (Boylan) and William P. Shannahan and his law firm, William P. Shannahan, Inc., (Shannahan) (collectively defendants) appeal the orders denying their respective anti-SLAPP motions brought under Code of Civil Procedure section 425.16[1] to strike the malicious prosecution action filed against them by plaintiff and respondent Cary Mack.[2] Boylan separately contends the court erred and abused its discretion when it denied Boylan's motion to disqualify Mack's counsel of record.

Mack was retained as a forensic accounting consultant/expert by Shannahan in a divorce proceeding filed by Shannahan's former wife (*Shannahan v. Shannahan* (Super. Ct. San Diego County, No. D483710)) (the dissolution action). While pursuing an appeal of the judgment in the dissolution action, Shannahan sued both Mack and certified family

---

[1]  All statutory references are to the Code of Civil Procedure unless indicated otherwise. Section 425.16 is commonly referred to as the anti-SLAPP statute. (*Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1568.) SLAPP is an acronym for "'strategic lawsuit against public participation.'" (*Jarrow Formulas*, *Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

[2]  Shannahan did not file a separate opening brief but instead joined in Boylan's brief. Mack has objected to Shannahan's joinder because Mack contends the record prepared by Boylan is incomplete as to Shannahan and because the contentions raised by Boylan are separate and distinct, inasmuch as Shannahan was the party to the underlying action while Boylan was his attorney. Mack thus has requested we summarily affirm the court's denial of Shannahan's anti-SLAPP motion. We decline to do so, however, and instead reach the merits of Shannahan's contention that the court erred in denying his separately filed anti-SLAPP motion.

2

law specialist Rex Jones III and Jones's law firm, Jones Barnes LLP, (Jones),[3] who had represented Shannahan in the dissolution action. The operative complaint filed by Boylan on behalf of Shannahan asserted causes against Mack for breach of fiduciary duty, elder abuse, professional negligence, negligent misrepresentation and breach of contract (*Shannahan v. Jones et al.* (Super. Ct. San Diego County, 2010, No. 37-2009-00088253-CU-PN-CTL)) (the underlying action).

After extensive litigation and the filing of a motion for summary judgment, Shannahan—shortly before the motion was to be heard and a few months before trial was to commence—dismissed Mack without prejudice from the underlying action. Mack subsequently was awarded his costs of defense as the prevailing party. Mack then filed the instant malicious prosecution action against defendants. Defendants, in return, filed anti-SLAPP motions, which the court denied.

As we explain, we affirm the orders denying (1) defendants' anti-SLAPP motions and (2) Boylan's motion to disqualify Mack's counsel of record.

FACTUAL AND PROCEDURAL BACKGROUND

At the time of the dissolution action, Shannahan was a licensed attorney and certified tax specialist practicing law for more than 40 years in the specialized areas of domestic and international tax, estate planning, retirement planning, partnership and corporation law. Shannahan hired Jones to represent him in the dissolution action. Jones, in turn, recommended Shannahan hire Mack and Mack's firm, which Shannahan

---

3        Jones is not a party in this proceeding.

did in 2004. Mack's retention agreement was signed both by Shannahan and Jones, although Shannahan alone was responsible for payment of Mack's invoices.

In June 2006, Shannahan designated Mack as his forensic accounting expert in the dissolution action. As set forth in that designation (see former § 2034, subd. (f) & § 2034.260), Mack's expected expert testimony involved the valuation of Shannahan's law practice and the tracing of assets in multiple retirement plans and IRA's created by Shannahan.

Before retaining Mack and Jones, Shannahan had determined that all contributions he made to various retirement plans during his marriage were separate property. Specifically, Shannahan believed the source of contributions to the plans was separate property because his law corporation's equity returns or "capital pool" distributions stemming from its partnership in a law firm predated his marriage (separate property theory).

In accordance with the scope of his firm's retention, Mack and his staff analyzed the assets and issues related to Shannahan's multiple retirement plans, a task that proved "difficult" and "complex" in large part because of Shannahan's "formation of numerous entities of various forms throughout a period of more than 25 years, and the many asset transfers he made to and through these entities for his tax and asset protection purposes." Mack's work included "analyzing financial activities of assets in the various retirement plans and IRA[']s, including numerous rollovers, which occurred both before and during

4

the [Shannahans'] more than 20-year marriage (which included an 11-month separation from approximately December 1985 to November 1986)."

"In the course of performing professional services in the dissolution action, [Mack] was instructed by counsel Mr. Jones that there was a lack of legal authority to support Mr. Shannahan's separate property argument. Mr. Shannahan's argument was that, if it could be proven that all of the contributions to the numerous retirement accounts came from a 'capital pool' distribution from his law practice, the contributions were his separate property and not community earnings [i.e., his separate property theory]. Mr. Jones is a highly[-]experienced certified family law specialist practicing for over 40 years.

"Based upon Mr. Jones'[s] determination that there was insufficient legal authority to support Mr. Shannahan's position, Mr. Jones instructed [Mack and his] firm to not testify to this 'theory' through [his] financial analysis. In addition to the lack of legal authority as determined by Mr. Jones, Mr. Shannahan could not locate or produce the basic documents that would have been necessary to adequately evaluate and assess his 'capital pool' theory even if there had been supporting legal authority."

As a result of the lack of both legal and factual support for Shannahan's separate property theory, Mack followed Jones's instruction. In so doing, according to Mack, Shannahan never advised Mack during the dissolution action that he disagreed with the scope of work Mack performed or Mack's testimony.

5

Mack prepared a written report that he presented both at his deposition and at trial before Judge Pro Tem Thomas Ashworth (the court).  With respect to the retirement plans, Mack presented four separate alternative financial models, which set forth calculations of the assets and financial activities in the numerous retirement plans over the span of about 25 years.  Each of the four alternative models was based on different assumed facts that would allow the court to select the appropriate model and, if necessary, make adjustments to specific percentages of separate and community property interests allocated to Shannahan and his former wife.  Each of the models "traced certain assets in the accounts to pre-marriage contributions made by Mr. Shannahan based upon available documentation."

The court in its final statement of decision (SOD) noted that the dissolution action was "perhaps the most convoluted and contentious case the Court had encountered in 45 years of experience."  It further noted that "[m]ost of the assets acquired during marriage are currently owned by trusts, partnerships or corporations and some of these entities have, or had, connections in the Cayman Islands, Hong Kong or Nevada."  The court recognized that Shannahan's position at trial was there was no community property in the various retirement plans.  The court found that such plans in 2006 had a value of about $4 million.  Relying on Mack's work product, the court adopted one of Mack's alternative models, rejected the model prepared by Mack that all of the plans' assets were separate property and awarded Shannahan about $3.1 million (or about 77 percent) of those assets.

6

In reaching its decision, the court rejected Shannahan's separate property theory that Shannahan himself had advanced (with the assistance of another attorney he separately retained, as discussed in more detail *post*) in the dissolution action, noting there was no "legal authority" to support this theory. The court also rejected Shannahan's former wife's position that all the assets in these accounts were community property.

The court further found that Shannahan breached his fiduciary duty to his former wife by transferring two substantial assets to "other entities without her specific knowledge or written consent or adequate compensation to the community" and that, as such, Shannahan violated Family Code sections 721 and 1100.

Shannahan appealed the judgment in the dissolution action to this court (see consolidated appeals in D053701 & D055292). With regard to the retirement plans, Shannahan represented to this court that the court erred in not awarding him as separate property 100 percent of the assets of those accounts because the "evidence at trial— presented by authoritative, direct testimony from [Shannahan], documented with meticulous exhibits, and confirmed by [Shannahan's] accounting expert (Cary Mack)— proved that the *source* for all of the contributions to [the main retirement accounts] was *entirely* [*Shannahan's*] *separate property interest in his capital pool income*," which main retirement accounts were the source "for all of the *other* retirement accounts . . . ." We nonetheless affirmed the court's ruling on this issue, noting that Shannahan cited no legal authority to support his characterization of the distributions he received from the law firm's "capital pool during marriage as separate property."

While Shannahan's appeal was pending in this court, he filed the underlying action, naming both Mack (but omitting Mack's firm) and Jones and Jones's law firm. Mack demanded that he be dismissed from the underlying action because, among other reasons, Shannahan allegedly had failed to follow the prefiling alternative dispute resolution procedure set forth in the retention agreement. After Mack and Shannahan entered into a tolling agreement, which tolled the statutes of limitations associated with Shannahan's claims against Mack, Shannahan dismissed Mack from that action without prejudice. Among other provisions, the tolling agreement required that Shannahan give Mack 30 days' written notice to terminate that agreement.

Boylan substituted into the action on behalf of Shannahan. Boylan filed on behalf of Shannahan a first amended complaint (FAC) that named Mack as a defendant despite the parties' tolling agreement and the fact Shannahan had dismissed Mack from the action. The FAC deleted a breach of trust cause of action but continued to name Mack as a defendant to each of the remaining five causes of action. Boylan subsequently filed a second amended complaint (SAC) that alleged the same five causes of action against Mack.

Mack wrote Boylan at least three times demanding to be dismissed with prejudice from the action. In one of his letters, Mack warned Boylan and Shannahan that the claims against him in the SAC were "not warranted by existing law, [were] devoid of evidentiary support, and lack[ed] probable cause . . . ." Mack indicated that unless he was dismissed from the underlying action, he would file a separate malicious prosecution

8

action against Boylan and Shannahan once Shannahan's action was terminated in Mack's favor. Neither Boylan nor Shannahan responded to Mack's letters.

Mack spent in excess of $300,000 in attorney fees and costs in defense of the underlying action. Mack conducted extensive discovery and filed a motion for summary judgment. In preparing for trial, Mack retained expert witnesses in the areas of family law forensic accounting and tracing, standard of care for accountants, employee benefits and retirement plans, and actuarial services for private corporation retirement plans.

In early August 2010, with trial set for mid-October 2010 and Mack's motion for summary judgment set for hearing in September, Shannahan dismissed Mack from the underlying action without prejudice after dismissing Jones from the action a few days earlier in exchange for mutual general releases and a waiver of costs. In late August 2010, a judgment of dismissal was entered in favor of Mack, and he was awarded costs of about $10,700.

Mack subsequently filed the instant malicious prosecution action against Shannahan and Boylan. Shannahan and Boylan in response each filed an anti-SLAPP motion to the malicious prosecution action. As noted, Boylan also filed a motion to disqualify Mack's counsel of record. After hearing argument and taking the matter under submission, the trial court denied all the motions.

In its 13-page order, the court ruled in part as follows:

"Defendants Nicholas A. Boylan and [the] Law Office of Nicholas A. Boylan, A Professional Corporation ('Defendants' or 'Boylan Defendants') have brought a special

motion to strike pursuant to CCP Sec. 425.15. [¶] The determination of a special motion to strike 'requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were undertaken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute. [Citation.] If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

"This Court concludes that Defendants have met their burden of showing that the complaint arises from their protected petitioning activities. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 9 Cal.4th 1106, 1115.)

"Having met this initial burden, the burden then shifts to Plaintiff to present sufficient evidence to establish 'that there is a probability that the plaintiff will prevail on the claim.' (CCP Sec. 425.16(b)(1).)

"Plaintiff's complaint here is for malicious prosecution. The elements of a malicious prosecution action are that the underlying action (1) was initiated by or at the direction of the defendant and was terminated in plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871.) 'A person who had no part in the commencement of the

10

action, but who participated in it at a later time, may be held liable for malicious prosecution.' [(]*Sycamore Ridge Apartments, LLC v. Naumann* (2007) 157 Cal.App.4th 1385 (*Sycamore Ridge*) quoting *Paramount General Hospital Co. v. Jay* (1989) 213 Cal.App.3d 360, 366, fn. 2.[)] In this case the Boylan Defendants continued to prosecute the underlying action after their substitution into the case and the Court believes Plaintiff has met his burden with respect to the first element. [See, for example, Plaintiff's Exs. 22, 24, 25[.]]

"Defendants argued, in part, that the underlying action, voluntarily dismissed by their client, did not result in a termination in Plaintiff's favor. The Court disagrees. The evidence submitted by Plaintiff—including the then-pending motion for summary judgment and recently obtained deposition testimony—permits the reasonable inference that the underlying action was dismissed based on a recognition that most of the claims made in that action were meritless. [(]*Sycamore Ridge* at 1400.[)] [See, for example, Plaintiff's Exs. 29, 30, 31[.]]

"Defendants further contend that there was probable cause to bring the underlying claims. 'An action is deemed to have been pursued without probable cause if it was not legally tenable when viewed in an objective manner as of the time the action was initiated or while it was being prosecuted. The court must "determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable." (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 878.) "The resolution of that question of law calls for the application of an *objective* standard to the facts on which the defendant acted.

11

[Citation[.]][") (*Ibid.*) The test the court is to apply is whether "any reasonable attorney would have thought the claim tenable . . . [.]" (*Id.* at p. 886.)' [(]*Sycamore Ridge* at 1402.[)] And, '"[a] litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which in untenable under the facts known to him."' [(]*Sycamore Ridge* at 1402[,] quoting *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 164-165.[)]

"Here, the Court concludes that Plaintiff has met his burden, at a minimum, as to the underlying causes of action for elder abuse, breach of fiduciary duty and negligent misrepresentation.

"As to the breach of fiduciary duty cause of action, the evidence submitted by the Plaintiff demonstrates that Plaintiff was retained to act as an accounting expert witness—and nothing more—in an underlying dissolution action concerning William Shannahan. The Court concludes that based on the evidence before it—and without weighing the credibility or comparing the weight of the evidence—that Plaintiff has demonstrated a probability of prevailing on the issue that this cause of action was not legally tenable. [See, for example, Declaration of Cary Mack and Plaintiff's Ex. 1[.]]

"Similarly, the Court finds that Plaintiff has met his burden with respect to the elder abuse cause of action. The Court believes the evidence before it does not support a claim that Mr. Shannahan was the victim of elder abuse as defined by Welfare & Institutions Code Sec. 15610.30. In this regard, the Court notes that although Mr. Shannahan could qualify as an 'elder' as that term is defined under the Welfare &

12

Institutions Code, Defendants cited no authority that such fact alone is sufficient to support a claim for elder abuse. Plaintiff denies engaging in acts of elder abuse [Plaintiff's Declaration, Para. 53] and Defendants offered no competent evidence to suggest that Plaintiff took or appropriated Mr. Shannahan's property for a wrongful use or with the intent to defraud or that Mr. Mack obtained Mr. Shannahan's property by undue influence.

"The Court also believes Plaintiff has met his burden with respect to the negligent misrepresentation cause of action. The evidence before the Court reflects an alleged misrepresentation that did not relate to a past or existing fact. [(]See *Tarmann v. State Farm Mutual Auto Ins. Co.* (1991) 2 Cal.App.4th 153, 158.[)] [See, for example, underlying complaint, Para. 25; amended complaint at Para. 27 and second amended complaint at Para. 28.]

"Finally, Defendants argued that Plaintiff cannot meet his burden with respect to the malice element. 'The malice element of the malicious prosecution tort goes to the defendant's subjective intent in initiating the prior action. (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 874.) For purposes of a malicious prosecution claim, malice "is not limited to actual hostility or ill will toward the plaintiff. Rather, malice is present when proceedings are instituted primarily for an improper purpose." (*Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1157.)' This Court finds that the continued maintenance of the underlying lawsuit that contained claims that Plaintiff has shown were legally untenable—after correspondence from Plaintiff's counsel so advising—is

13

sufficient to satisfy the Plaintiff's burden on this element. [See, for example, Plaintiff's Exs. 20, 26 and 27.]

"Based on the above, the special motion to strike is denied."

After ruling on the parties' evidentiary objections, the court for nearly identical reasons denied Shannahan's anti-SLAPP motion. As also discussed *post*, the court denied Boylan's motion to disqualify Mack's counsel.

DISCUSSION

I

The Anti-SLAPP Motions

A. *Guiding Principles*

Under section 425.16, subdivision (b)(1), a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." In making this determination, the court "shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).)

In the instant case, there is no dispute among the parties that a malicious prosecution claim is subject to the anti-SLAPP statute. (See *Jarrow Formulas, Inc. v. LaMarche*, *supra*, 31 Cal.4th at pp. 728, 736-741; *Kleveland v. Siegel & Wolensky, LLP*

14

(2013) 215 Cal.App.4th 534, 548-549.) As such, the burden then shifted to Mack to show a likelihood of prevailing on the claim. (See § 425.16, subd. (b)(1).)

To show the likelihood of prevailing on the merits, a plaintiff "'must demonstrate that the complaint [was] both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence [he] submitted . . . [was] credited.' [Citations.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) "'We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." [Citation.] However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citations.]" (*Nygard, Inc. v. Uusi–Kerttula* (2008) 159 Cal.App.4th 1027, 1036.)

In opposing an anti-SLAPP motion, a plaintiff need only establish that the claim subject to section 425.16 has "minimal merit." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291; *Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1397.) We independently review the trial court's order granting a special motion to strike under section 425.16. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055.)[4]

---

[4] Despite the express statutory language in subdivision (b)(1) of section 425.16 that merely requires Mack to establish a *probability* of prevailing on his malicious prosecution action, Boylan contends (with little or no legal support) that for Mack to satisfy this burden he allegedly "must prove the absence of evidence" that Boylan proffered in support of the claims in the underlying action. Boylan thus contends that "[u]nlike a defendant's motion for summary judgment, in opposing an anti-SLAPP

B.  *Probability of Prevailing on the Malicious Prosecution Claim*

As noted by the trial court, in order to prove a malicious prosecution claim, Mack must show the underlying action "'(1) was commenced by or at the direction of the defendant[s] and was pursued to a legal termination in . . . plaintiff's[ ] favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].'  [Citation.]"  (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 676; see also *Soukup v. Law Offices of Herbert Hafif*, *supra*, 39 Cal.4th at p. 292.)

1.  Favorable Termination

The record shows Mack was dismissed in the underlying action with trial scheduled to start in about two months, while his motion for summary judgment was pending and within days after codefendant Jones was dismissed from the same action.  In addition, the record shows that a judgment of dismissal was subsequently entered in favor of Mack and he was awarded costs of about $10,700.

We independently conclude that Mack satisfied his burden under subdivision (b)(1) of section 425.16 of showing the underlying action was terminated in his favor.  (See *Sycamore Ridge Apartments LLC. v. Naumann*, *supra*, 157 Cal.App.4th at p. 1400 [noting that a voluntary dismissal, such as in the instant case, "is presumed to be a

---

motion the burden is on plaintiff to prove his case."  We disagree.  Mack is not required to "prove his case" in opposing the anti-SLAPP motion but rather is required to proffer sufficient evidence that, if believed, satisfies his *minimal* burden under subdivision (b)(1) of section 425.16 to show a *probability* of prevailing on his malicious prosecution claim. (See *Zamos v. Stroud* (2004) 32 Cal.4th 958, 964-965 [noting the plaintiff in a malicious prosecution action has a burden under subd. (b)(1) of § 425.16 to present "evidence in opposition to defendants' anti-SLAPP motion that, if believed by the trier of fact, was sufficient to support a judgment in plaintiffs' favor"].)

16

favorable termination on the merits, unless otherwise proved to a jury"]; cf. *Lackner v. LaCroix* (1979) 25 Cal.3d 747, 750-751 [observing that a dismissal (i.e., for failure to prosecute) "'reflect[s] on the merits of the action'" in favor of the defendant because of "'the natural assumption that one does not simply abandon a meritorious action once instituted'"].)

Moreover, we note that defendants have not challenged in this proceeding the finding by the court that the underlying action was terminated in Mack's favor for purposes of his malicious prosecution action. For this separate and independent reason, we conclude Mack made a prima facie showing of favorable termination. (See *Johnston v. Board of Supervisors* (1947) 31 Cal.2d 66, 70 [issues raised in the trial court but not argued by the parties on appeal are deemed waived], overruled on another ground as stated in *Bailey v. County of L.A.* (1956) 46 Cal.2d 132, 139.)

2. <u>Probable Cause</u>

"An action is deemed to have been pursued without probable cause if it was not legally tenable when viewed in an objective manner as of the time the action was initiated or while it was being prosecuted. The court must 'determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable.' (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 878.) 'The resolution of that question of law calls for the application of an objective standard to the facts on which the defendant acted. [Citation.]' (*Ibid.*, italics omitted.) The test the court is to apply is whether 'any reasonable attorney would have thought the claim tenable . . . .' (*Id.* at p.

17

886.)  The tort of malicious prosecution also includes the act of 'continuing to prosecute a lawsuit discovered to lack probable cause.'  (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 973.)  In determining the probable cause issue, the same standard applies 'to the continuation as to the initiation of a suit.'  (*Id*. at p. 970.)

"'In analyzing the issue of probable cause in a malicious prosecution context, the trial court must consider both the factual circumstances established by the evidence and the legal theory upon which relief is sought.  A litigant will lack probable cause for his [or her] action either if he [or she] relies upon facts which he [or she] has no reasonable cause to believe to be true, or if he [or she] seeks recovery upon a legal theory which is untenable under the facts known to him [or her].'  [Citation.]

"In determining whether the prior action was legally tenable, i.e., whether the action was supported by probable cause, the court is to construe the allegations of the underlying complaint liberally, in a light most favorable to the malicious prosecution defendant.  [Citation.]"  (*Kleveland v. Siegel & Wolensky, LLP*, *supra*, 215 Cal.App.4th at pp. 550-551.)

If, as in the instant case, the prior action charged multiple grounds of liability, a malicious prosecution action will lie if *any* of those grounds was asserted without probable cause and with malice.  (*Crowley v. Katleman*, *supra*, 8 Cal.4th at p. 671 [holding that "a suit for malicious prosecution lies for bringing an action charging multiple grounds of liability when some but not all of those grounds were asserted with malice and without probable cause"].)

Focusing on the breach of fiduciary duty cause of action, the issue is whether Mack presented evidence in opposition to defendants' anti-SLAPP motions that, if believed by the trier of fact, was sufficient to support a finding that defendants initiated or continued to prosecute this cause of action against Mack without probable cause. We conclude Mack has proffered sufficient evidence to make the minimal showing required to support this finding. (See *Soukup v. Law Offices of Herbert Hafif*, *supra*, 39 Cal.4th at p. 291.)

The SAC prepared by Boylan on behalf of Shannahan alleges Mack at all times relevant was a "certified public accountant *and* an attorney duly admitted to practice in the State of California," who was "working as an expert witness and professional consultant on forensic accounting and litigation matters." (Italics added.) The SAC further alleges that Jones, who at all times relevant was a "certified specialist in family law," recommended that Mack be retained to "perform professional services, provide professional advice as a business consultant, and to trace the origin of Shannahan's IRAs and Retirement Plans and to present his evidence and conclusions as an expert witness."

The SAC alleges that "Defendants [i.e., Mack and Jones] owed to Plaintiff [i.e., Shannahan] various duties including that of good faith and fair dealing, and a duty to do nothing to deprive him [i.e., Shannahan] of the benefit of the various contracts and other legally-binding transactions in which he entered. In addition, each of the Defendants [i.e., Mack and Jones] had duties set forth in the Rules of Professional Conduct governing

19

the actions of attorneys. These Defendants held themselves out as experts in divorce law and the tracing of assets in the manner necessary to establish a spouse's rights therein."

In addition, the SAC alleges Mack and Jones as fiduciaries *each* allegedly breached that duty "by failing to represent him competently as his attorneys, accountants, and trusted advisors. They failed to adequately and competently trace the sources of various assets and accounts of Shannahan, failed to advise him to seek other counsel and other advisors if they did not fully understand these issues, failed to give competent legal advice, failed to adequately protect his interests in separate property and exposed him to claims that could deprive him of much of the assets he worked a lifetime to earn." As a result of the breach of fiduciary duty, the SAC alleges Shannahan suffered damages of "not less than $1,000,000."

"'The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach.' [Citation.]" (*Gutierrez v. Girardi* (2011) 194 Cal.App.4th 925, 932.)

Boylan contends Mack cannot satisfy his minimal burden under subdivision (b)(1) of section 425.16 to show Boylan filed and prosecuted on behalf of Shannahan a breach of fiduciary duty cause of action in the SAC that was not legally tenable when viewed in an objective manner. Specifically, Boylan proffers evidence showing he reviewed the files, documents and evidence from the dissolution action, including the file from Jones and Mack's reports and drafts of reports, and had multiple conferences, interviews and meetings with Shannahan and his appellate counsel and, from this information and the

20

information he obtained during the pendency of the underlying action, he "believed the claims against Mr. Mack were clearly tenable."

As relevant to this cause of action, Boylan, in support of the anti-SLAPP motion, cites to evidence from Shannahan in which Shannahan stated under oath that Mack improperly assumed the role of legal advisor and legal decision maker in connection with Shannahan's separate property theory.[5]

Mack, in response, proffered evidence showing that Shannahan did not retain Mack or the (two) firms where he worked to provide Shannahan legal services; that neither Mack nor his firms have ever provided legal services to anyone, including to Shannahan; that Mack has never been employed by a law firm and has never represented himself to be a "practicing attorney"; that consistent with the retention agreement signed by Shannahan and Jones, on the one hand, and Mack on the other, Mack and his firm were retained in the dissolution action solely in the capacity of valuation and forensic accounting experts; that Shannahan had hired Jones—a certified family law specialist—and not Mack to provide Shannahan legal services in the dissolution action and later hired attorney Darvy Mack Cohan to assist him in presenting his separate property theory at trial in the dissolution action; that Shannahan also hired attorney John Morris as legal

---

5    We note that the court, in denying Boylan's anti-SLAPP motion, sustained Mack's objection to this testimony, which ruling—along with many other evidentiary rulings—Boylan challenges on appeal.  However, assuming arguendo the trial court erred in sustaining Mack's objection to this evidence, we conclude that error was harmless inasmuch as we have considered this evidence as well as other evidence ruled inadmissible by the court and determined none of it changes the outcome of our decision in this case.

counsel to assist him during the posttrial and appellate phases of the dissolution action; and that the first time Shannahan suggested Mack owed him a fiduciary relationship as a result of Mack being a licensed attorney was in the underlying action.

In addition, the attorney declaration accompanying the expert witness exchange (as amended) stated the "general substance of the testimony" (see § 2034.260, subd. (c)(1)) Mack was expected to give in the dissolution action involved (1) valuing Shannahan's law practice and (2) the tracing of his retirement plans.

From the foregoing, even construing the allegations of the underlying action liberally in favor of defendants, we conclude Mack proffered sufficient admissible evidence that, if believed, satisfies his minimal burden to make a prima facie showing that defendants relied on facts that they had no reason to believe were true and also relied on a legal theory that was untenable when they asserted in the SAC that Mack allegedly owed Shannahan a fiduciary duty because Mack, in the dissolution action, provided legal services to and acted as an attorney for Shannahan. We further conclude the evidence proffered by Boylan, if believed, gives rise to a dispute as to the state of defendants' knowledge with respect to probable cause, or lack thereof, in connection with the duty issue, which dispute must be resolved by a jury. (See *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 223.)

This does not end our inquiry on the issue of lack of probable cause and duty, however. As stated, defendants also alleged in the underlying action that Mack owed Shannahan a fiduciary duty based on the fact Mack was hired in the dissolution action to

22

"perform professional services, provide professional advice as a business consultant, and to trace the origin of Shannahan's IRAs and Retirement Plans and to present his evidence and conclusions as an expert witness."

As already noted, the evidence in the record shows that Mack and his firm were retained by Shannahan based on the recommendation of Jones; that when Mack was designated as an expert witness, the subject matter of his testimony involved the valuation of Shannahan's law practice and the tracing of assets in the various retirement plans; that Jones was responsible for the scope and direction of the work Mack was performing, subject to the parameters and requirements governing CPA's; and that Mack testified as an expert witness on these subject matters both at deposition and at trial in the dissolution action.

We conclude from the foregoing that Mack proffered sufficient admissible evidence to make a prima facie showing that defendants relied on a legal theory—that Mack owed a fiduciary duty to Shannahan based on Mack's retention as an expert witness in the dissolution action—that was objectively untenable. Indeed, at a minimum, once Mack was designated and testified as an expert witness in the dissolution action regarding the tracing of assets in the various retirement accounts, Shannahan had no reasonable expectation of maintaining the confidentiality of Mack's work product and communications with respect to this subject matter, which subject matter is at the heart of Shannahan's alleged damages in the underlying action. (See *Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 29 [noting a fiduciary relationship ""ordinarily arises where

23

a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he [or she] voluntarily accepts or assumes to accept the confidence, can take no advantage from his [or her] acts relating to the interest of the other party without the latter's knowledge or consent"'"]; *Shadow Traffic Network v. Superior Court* (1994) 24 Cal.App.4th 1067, 1079 [noting the protections afforded by the attorney-client privilege and work product doctrine are "lost upon designation of the expert as a witness because the decision to use the expert as a witness manifests the client's consent to disclosure of the information"].)

But even if we concluded defendants' theory that Mack owed Shannahan a fiduciary duty was reasonably tenable with respect to Mack's role in the dissolution action, we would still conclude Mack has satisfied his burden to show a lack of probable cause in connection with this claim. In addition to alleging Mack owed Shannahan a fiduciary duty, defendants in the underlying action also alleged in the SAC that Mack breached that duty and that his breach caused Shannahan damage. (See *Gutierrez v. Girardi*, *supra*, 194 Cal.App.4th at p. 932.)

Mack's evidence is sufficient to make a prima facie showing that Shannahan relied on facts that he had no reason to believe were true when defendants alleged Mack breached a fiduciary duty to Shannahan in the dissolution action. As stated, it was Jones and not Mack who determined there was a lack of legal authority to support Shannahan's *own* separate property theory.

Jones testified that he discussed Shannahan's separate property theory with Shannahan in or about the "first quarter" of 2005 and that Mack was also present at that meeting. During the meeting, Jones told Shannahan there were "no legal basis" and "no legal support" for Shannahan's separate property theory.

Jones testified that because of the laws in the Family Code, it is presumed that all property acquired during marriage is community and that all income generated during the marriage is community "unless it can be traced back to a separate property source." Jones testified he advised Shannahan that because, in Jones's view, the "chief contributing factor to the creation of income that he received from the [law] firm was his [i.e., Shannahan's] skill, energy, and labor during marriage, that . . . all income from that source was community." According to Jones, Shannahan disagreed with Jones's "tactical decision" not to go forward with Shannahan's "separate property tracing claim or theory."

Jones testified not only was there no legal authority and insufficient documentation to support Shannahan's separate property theory but also he was concerned that, if they pursed that theory, it would create a "credibility issue" with respect to other legal issues that were pending in the dissolution action, including whether Shannahan breached his fiduciary duty to his former wife with respect to the transfer of assets.

Mack proffered evidence showing Mack (through counsel, as discussed *post*) in early January 2010 sent Boylan a letter in which Mack specifically told Boylan that Shannahan's causes of action in what was then the FAC were frivolous and would be the

25

subject of a malicious prosecution action because, as the court in the dissolution action found, there was no "legal or factual basis" to support Shannahan's separate property theory; Shannahan did not have documents dating back to the approximate 20-year time span that would have been needed to support that theory; and significantly, Jones had "counseled Mr. Shannahan against asserting such a claim in the dissolution action." Mack also explained to Boylan that Jones believed advocating an "unsupportable theory" would undermine Shannahan's credibility with the court.

We conclude this evidence, if believed, supports the finding that it was Jones and not Mack who refused to pursue Shannahan's separate property theory in the dissolution action; that defendants—including Boylan—were clearly on notice of this fact in January 2010, at the latest; and that defendants therefore had no reasonable cause to continue to rely on the fact that it was Mack who refused to pursue Shannahan's theory and thus breached his alleged fiduciary duty to Shannahan.

That Boylan proffered evidence showing Shannahan believed otherwise, including that Mack failed to develop and present Shannahan's separate property theory after allegedly agreeing to do so and/or failed to notify promptly Shannahan of his decision not to pursue this theory, after charging Shannahan thousands of dollars to work it up, does not change our conclusion here.

Indeed, these facts, if believed, do not establish probable cause as a matter of law but rather merely give rise to a factual dispute between the parties for purposes of the anti-SLAPP statute regarding whether Shannahan and Boylan objectively believed they

26

had sufficient probable cause to institute and/or continue to prosecute the breach of fiduciary duty cause of action against Mack. (See *Daniels v. Robbins*, *supra*, 182 Cal.App.4th at p. 223; see also *Sheldon Appel Co. v. Albert & Oliker*, *supra*, 47 Cal.3d at p. 881 [noting that when "there is a dispute as to the state of the defendant's knowledge and the existence of probable cause turns on resolution of that dispute . . . the jury must resolve the threshold question of the defendant's factual knowledge or belief"].)

In addition, the record shows that Shannahan, with the assistance of Cohen, did in fact present his separate property theory at the trial in the dissolution action and that the court rejected this theory because it found no legal authority supported it. This evidence further supports the conclusion that Mack satisfied his minimal burden of showing that defendants in Shannahan's SAC relied on facts in Shannahan's breach of fiduciary duty cause of action that they had no reasonable cause to believe were true with respect to the alleged cause (or lack thereof) of his alleged "damages" arising from the alleged breach of duty.

Because we conclude for purposes of the anti-SLAPP statute that at least one of the causes of action against Mack was brought without probable cause, we need not decide whether any of the remaining causes of action in the underlying action also were brought without probable cause for purposes of deciding whether Mack satisfied his burden to show a probability of success on the merits in connection with his malicious prosecution action. (See *Crowley v. Katleman*, *supra*, 8 Cal.4th at p. 671.)

27

Nonetheless, we separately conclude Mack also satisfied his burden of showing a lack of probable cause with respect to the elder abuse cause of action asserted by defendants in Shannahan's SAC. Mack proffered sufficient evidence to show no reasonable attorney would have thought that claim was tenable under the known facts, inasmuch as the evidence, if believed, supports the findings (1) that Shannahan was neither an "infirm elderly person[]" nor a "dependent adult[]" deserving of protection in the dissolution action (see Welf. & Inst. Code, § 15600, subds. (a), (c) & (h)), as there is substantial evidence showing Shannahan at all times relevant in that action was a sophisticated, highly-experienced tax specialist who aggressively pursued his *own* separate property theory after Jones made a tactical decision and refused to do so, including offering expert witness testimony in support of that theory; and (2) that Mack did not wrongfully take or misappropriate Shannahan's property "for a wrongful use or with intent to defraud, or both" or by means of undue influence, in connection with Mack's engagement and work as a forensic accounting expert for Shannahan in the dissolution action. (See *id.*, § 15610.30.)

Again, the evidence proffered by Boylan that Mack allegedly "took financial advantage" of Shannahan by "representing he would do the separate property tracing, billing Mr. Shannahan for two years, preparing a report which he threw out and admits he threw out [and] collecting fees from Mr. Shannahan," even if admissible[6] and believed,

---

6    See footnote 5, *ante.*

merely creates a factual dispute on the issue of probable cause that is for the jury to decide. (See *Daniels v. Robbins*, *supra*, 182 Cal.App.4th at p. 223.)

3. Malice

Defendants next contend Mack failed to meet his minimal burden to show a probability of prevailing on the malice element of his malicious prosecution case. We disagree.

The malice element focuses on a defendant's subjective intent in initiating the prior action and is generally an issue to be determined by a jury. (*Sheldon Appel Co. v. Albert & Oliker*, *supra*, 47 Cal.3d at p. 874; *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218.) To establish malice, Mack was required to show by a preponderance of the evidence that defendants brought the underlying action based on hostility or ill will or for another improper purpose. (See *Ross v. Kish* (2006) 145 Cal.App.4th 188, 204; *Padres L.P. v. Henderson* (2003) 114 Cal.App.4th 495, 522.)

"Malice is usually proved by circumstantial evidence. [Citation.] Although a lack of probable cause, standing alone, does not support an inference of malice, malice may still be inferred when a party knowingly brings an action without probable cause. [Citation.]" (*Padres L.P. v. Henderson*, *supra*, 114 Cal.App.4th at p. 522.) Whether malice exists presents a factual question, and its proof may be inferred from all the circumstances of the case. (*Sheldon Appel Co. v. Albert & Oliker*, *supra*, 47 Cal.3d at p. 874.)

Here, we conclude Mack has submitted sufficient evidence for purposes of the anti-SLAPP statute from which a reasonable person could infer an improper motive by defendants in asserting causes of action for breach of fiduciary duty and/or elder abuse against Mack in the underlying action. As stated, Mack wrote Shannahan and/or Boylan at least three times after he was sued in the underlying action.

In the first letter, which was written less than a week after Shannahan filed the underlying action, Mack noted Shannahan had filed that action without regard to the provision in the retention agreement signed by Mack and Shannahan requiring the parties first to participate in a mediation administered by the American Arbitration Association under the Professional Accounting and Related Services Dispute Resolution Rules before resorting to litigation. Mack also warned that the causes of action against him lacked probable cause and that he would seek appropriate relief, including sanctions under section 128.7, if Shannahan did not dismiss Mack from the complaint. Shannahan did not respond to this letter.

Mack next wrote Shannahan and Boylan in early January 2010 after Boylan filed the SAC on behalf of Shannahan. Mack again demanded that he be dismissed from the underlying action and noted that the parties' tolling agreement required 30 days' written notice before termination. In addition, as noted *ante*, Mack informed Boylan that it was Jones who counseled against asserting Shannahan's separate property theory at the trial in the dissolution action because, like the court in its SOD, Jones had concluded there was no legal or factual basis to support it and because Jones was concerned pursuing that

30

theory would undermine Shannahan's credibility on other material issues. Mack again warned Shannahan and Boylan that if he was not dismissed from the underlying action, he would vigorously defend the lawsuit, seek sanctions when appropriate and pursue them for malicious prosecution. Neither Shannahan nor Boylan responded to this letter.

A week later, Mack again wrote Boylan after receiving three letters from Boylan regarding discovery issues, among other subject matters, in connection with the underlying action. Mack once more demanded that he be dismissed from the underlying action, but, again, neither Shannahan nor Boylan responded to his request.

In addition, as shown *ante*, there is admissible evidence showing Shannahan knew as early as 2005—about four years *before* Shannahan filed his complaint in the underlying action—that it was Jones and not Mack that determined there was no legal support for Shannahan's *own* separate property theory and that, therefore, this theory would not be pursued at the trial in the dissolution action.

We conclude this evidence supports the inference that defendants acted with malice in connection with the filing of the lawsuit, including the FAC and SAC, against Mack, and thus Mack has satisfied his minimal burden under the anti-SLAPP statute to show a probability of success on this element of his malicious prosecution action.

II

Boylan's Motion to Disqualify Mack's Counsel

Boylan alone alternatively contends the court abused its discretion and thus erred when it denied the motion to disqualify Mack's counsel of record, Donald English and the

31

law firm of English & Gloven (English), because English represented Mack in the underlying action and is also acting as his counsel of record in the malicious prosecution action.

In denying Boylan's motion, the court ruled as follows:

"The Declaration of Mr. Mack confirms that he has given his informed written consent to his counsel's continued representation.

"Notwithstanding counsel having received his client's consent, Defendants argue that disqualification may still be ordered upon a 'convincing demonstration of detriment to the opposing party or injury to the integrity of the judicial process.' [(]*Smith, Smith & Kring v. Superior Court (Oliver)* (1997) 60 Cal.App.4th 573 ('*Smith, Smith & Kring*').[)] Defendants argue that such detriment exists here because Mr. English will necessarily be called as a witness at trial and testify as to key issues in the case. The Court concludes that Defendants have failed to demonstrate detriment to them or to the integrity of the judicial process if Mr. English is not disqualified.

"In denying this motion the Court has first considered 'the combined effects of the strong interest parties have in representation by counsel of their choice and in avoiding the duplicate expense and time-consuming effort involved in replacing counsel already familiar with the case.' [(]*Smith, Smith & Kring*, at 580-81, citing *Lyle v. Superior Court* (1981) 86 Cal.App.3d 470, 481 and *Younger v. Superior Court* (1978) 86 Cal.App.3d 180, 201.[)] Insofar as this consideration, the Court does not agree with Defendants that

because this action is in its somewhat early state that significant duplicative efforts and expenses will not be incurred.

"Although the Court does not believe Plaintiff has demonstrated that Defendants are using this motion to disqualify for purely tactical reasons and/or to delay the litigation, the Court is mindful of the fact that to grant this motion would result in delay of the litigation.

"The Court has also considered whether Mr. English's testimony is genuinely needed and, if so, the significance of the matters to which he might testify, the weight that testimony might have and the availability of other witnesses or evidence by which these matters may be established. Here, although not entirely clear that Mr. English will testify, it appears there is a relative likelihood that some testimony from him will be needed.

"In their reply, Defendants argued that '[t]he fact that English is of the opinion that he obtained the favorable termination he contends occurred highlights the fact that English is a material witness as to that issue, an issue that is disputed, and hence, supports the basis for his disqualification.' [Defendants' emphasis[.]] Although favorable termination may well be a disputed issue at trial, it is not clear to the Court how Mr. English's opinion that he obtained a favorable termination will be the subject of his examination. For example, Mr. English possibly may testify that there was a summary judgment motion pending at the time the dismissal was filed. He may also testify regarding deposition testimony he obtained from witnesses preceding the dismissal.

33

However, it does not appear to the Court that Mr. English would be called to express his own opinion that these events constituted a favorable termination of the underlying action in his client's favor.

"Similarly, the Court does not find persuasive Defendants' argument that letters Mr. English wrote in the underlying action (which this Court cited to in its earlier tentative ruling and has now cited to in its order denying the motions to strike) will be the subject of Mr. English's testimony so as to cause harm to the integrity of the judicial process. Again, it does not appear to the Court that Mr. English will be testifying as to the ultimate issue of whether these letters demonstrate malice or not; rather, presumably, he will testify to foundational facts such as that he authored the letters.

"For the above reasons, the Court finds disqualification to not be appropriate."

A. *Guiding Principles*

We may review a trial court's decision on a disqualification motion *only* for abuse of discretion. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143; *Jorgensen v. Taco Bell Corp.* (1996) 50 Cal.App.4th 1398, 1402.) If the trial court resolved disputed factual issues, we determine whether substantial evidence supports the trial court's findings of fact. (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159; *Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 822.) When the factual findings are supported by substantial evidence, we review the conclusions based on those findings for abuse of discretion. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, *supra*, at p. 1144.)

34

The issue before us involves rule 5-210 of the Rules of Professional Conduct (rule 5-210). It provides in part: "A member shall not act as an advocate before a jury which will hear testimony from the member unless: [¶] . . . [¶] (C) The member has the informed, written consent of the client. . . ."[7]

Rule 5-210 was addressed in *Smith*, *supra*, 60 Cal.App.4th 573. There, the plaintiff sued her former attorneys, SS&K, for legal malpractice among other claims, asserting SS&K misled her into agreeing to settle for too little money in a personal injury lawsuit arising from an automobile accident. SS&K hired the attorneys that had represented the defendant in the plaintiff's personal injury action, HB&B, to defend it in the legal malpractice case. The plaintiff then moved to disqualify HB&B, which motion was granted. The Court of Appeal reversed. (*Smith*, *supra*, 60 Cal.App.4th at p. 576.)

In so doing, the *Smith* court reviewed former rule 2-111(A)(4), including an amendment to that rule that was made in response to our Supreme Court's decision in *Comden v. Superior Court* (1978) 20 Cal.3d 906, 915-916, which applied an earlier version of rule 2-111(A)(4) to uphold a trial court's decision to recuse an attorney solely on the basis that the attorney was a *potential* trial witness. The *Smith* court noted that

---

[7]     Former rule 2-111(A)(4) of the Rules of Professional Conduct (former rule 2-111(A)(4)) was superseded in 1989 by rule 5-210. (See *Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573, 578 (*Smith*)). Former rule 2-111(A)(4) provided in part that if "'upon or after undertaking employment, a member of the State Bar knows or should know that the member ought to be called as a witness on behalf of the member's client in ligation concerning the subject matter of such employment, the member may continue employment only with the written consent of the client given after the client has been fully advised regarding the possible implications of such dual role as to the outcome of the client's cause and has had a reasonable opportunity to seek the advice of independent counsel on the matter.'" (*Smith*, at pp. 578-579.)

after former rule 2-111(A)(4) was amended (see fn. 7, *ante*), a "'trial court, when balancing the several competing interests, should resolve the close case in favor of the client's right to representation by an attorney of his or her choice and not as in *Comden* [*v. Superior Court*], in favor of complete withdrawal of the attorney. Under the present rule [i.e., amended former rule 2-111(A)(4)], if a party is willing to accept less effective counsel because of the attorney's testifying, neither his opponent nor the trial court should be able to deny this choice to the party without a convincing demonstration of detriment to the opponent or injury to the integrity of the judicial process.' [Citations.]" (*Smith*, *supra*, 60 Cal.App.4th at p. 579.)

Because HB&B obtained written consent from SS&K, much like English has obtained the written consent of Mack here, the *Smith* court reviewed the evidence proffered by the plaintiff to determine whether she satisfied her burden to show a "'convincing demonstration of detriment.'" (*Smith*, *supra*, 60 Cal.App.4th at p. 579.) After balancing the several competing interests in ruling on such a motion, the *Smith* court concluded that the plaintiff had not met her burden. (*Id.* at pp. 580-582.)

With regard to the balancing of competing interests, the *Smith* court noted a court should "start with the proposition that '[t]he right of a party to be represented in litigation by the attorney of his or her choice is a significant right'" and noted that rule 5-210 "'permit[ed] HB&B to act as both advocate and witness since the firm obtained SS&K's consent and 'the fact that the client has consented to the dual capacity must be given great

36

weight.'"  (*Smith*, *supra*, 60 Cal.App.4th at p. 580.)  The court then looked at a variety of factors, which provide some guidance on the issue here:

"First, the court must consider the combined effects of the strong interest parties have in representation by counsel of their choice, and in avoiding the duplicate expense and time-consuming effort involved in replacing counsel already familiar with the case. [Citations.]  '[I]t must be kept in mind that disqualification usually imposes a substantial hardship on the disqualified attorney's innocent client, who must bear the monetary and other costs of finding a replacement.'  [Citation.]

"Second, the court must consider the possibility counsel is using the motion to disqualify for purely tactical reasons.  [Citation.]  Should counsel freely be able to disqualify opposing counsel simply by calling them as witnesses, it would 'pose the very threat to the integrity of the judicial process that [motions to disqualify] purport to prevent.'  [Citation.]  '"After all, in cases that do not involve past representation [conflict cases] the attempt by an opposing party to disqualify the other side's lawyer must be viewed as part of the tactics of an adversary proceeding."'  [Citation.]

"Finally, '"[W]henever an adversary declares his intent to call opposing counsel as a witness, prior to ordering disqualification of counsel, the court should determine whether counsel's testimony is, in fact, genuinely needed."'  [Citations.]  In determining the necessity of counsel's testimony, the court should consider 'the significance of the matters to which he [or she] might testify, the weight his [or her] testimony might have in resolving such matters, and the availability of other witnesses or documentary evidence

37

by which these matters may be independently established.' [Citations.] The court should also consider whether it is the trial attorney or another member of his or her firm who will be the witness." (*Smith*, *supra*, 60 Cal.App.4th at pp. 580-581.)

B. *Analysis*

Here, the record shows the court considered the factors discussed in *Smith* when it denied Boylan's motion to disqualify English as Mack's counsel of record. We conclude substantial evidence supports the finding of the court that recusal of English would result in "significant duplicative efforts and expenses" to Mack, given the evidence in the record that English has extensive knowledge of the issues and subject matter raised both in the dissolution and underlying actions that is relevant to Mack's malicious prosecution action and given the evidence that Mack would be "forced to incur substantial financial costs for new counsel to duplicate the effort and work" performed by English if English was disqualified as his counsel of record.

In addition, although the court found Boylan was not moving to disqualify English for "purely tactical reasons," the court did find that if English was disqualified as counsel of record, trial would be delayed. This finding further supports the finding that disqualification of English as counsel of record would require a duplication of work by a new attorney at additional cost to Mack.

Moreover, """in cases that do not involve past representation [conflict cases] the attempt by an opposing party to disqualify the other side's lawyer must be viewed as part of the tactics of an adversary proceeding.""" (See *Smith*, *supra*, 60 Cal.App.4th at p. 581.)

38

Here, the instant case is not a "conflict case" where English, for example, previously represented one of the defendants. In fact, we note the facts of *Smith* are even more compelling for disqualification than the instant case because there, HB&B represented the defendant in the underlying personal injury action and was subsequently retained by SS&K—the plaintiff's former lawyers—in the malpractice action. Nonetheless, the court in *Smith* found the evidence proffered by the plaintiff insufficient to overcome the strong interest of parties in choosing counsel of their choice. (See *id.* at p. 580.)

Regarding the final factor and whether English's testimony will really be needed at the trial on the malicious prosecution action, Boylan contends English's involvement in opposing the anti-SLAPP motion, including the letters he authored to Shannahan and/or to Boylan, proves English will be a key witness on material issues in the case. The court disagreed. The court found that although there was a "relative likelihood" that English would give "some testimony" at trial, it also found most if not all of that testimony would involve "foundational facts" including, by way of example only, that English authored letters to Shannahan and/or Boylan during the pendency of the underlying action requesting that his client Mack be dismissed; that he caused to be filed a summary judgment that was pending when defendants dismissed Mack from the underlying action; and/or that he took depositions of witnesses in the underlying action. In making these findings, the court noted that English would likely not be giving testimony regarding the ultimate issues in the malicious prosecution action (i.e., favorable termination and/or malice).

39

Although Boylan is correct that the trial court and now this court have relied in part on the three letters English authored to Shannahan and/or Boylan in 2009 and 2010 in concluding Mack satisfied his minimal burden under the anti-SLAPP statute to show a probability of succeeding on his malicious prosecution action, we conclude such reliance does not equate to a finding of "'convincing demonstration of detriment'" that is necessary to disqualify English as counsel of record.  (See *Smith*, *supra*, 60 Cal.App.4th at p. 579.)

Instead, we conclude the court properly exercised its discretion when it found that even *if* English does testify at the malicious prosecution trial, his testimony likely would be limited to foundational facts, as other witnesses—including Mack himself and/or his experts—could testify regarding the contents of the letters and/or the significance of the subject matter(s) they address.  (See *Smith*, *supra*, 60 Cal.App.4th at p. 581 [in determining the necessity of counsel's testimony the court should consider among other factors the "'significance of the matters to which [counsel] might testify, the weight [counsel's] testimony might have in resolving such matters, and the availability of other witnesses or documentary evidence by which these matters may be independently established'"].)

Moreover, we note the existence of documentary evidence, including Mack's discovery responses, which Boylan admits contain "detailed facts regarding numerous alleged defects in Shannahan's claims" against Mack.  The existence of this and other documentary evidence further supports the finding that evidence other than English's

40

testimony could be used by Mack in support of his malicious prosecution action. (See *Smith*, *supra*, 60 Cal.App.4th at p. 581.)

We reach the same conclusion with the respect to the (tacit) finding of the trial court that to the extent English may testify regarding the motion for summary judgment that was pending when defendants dismissed Mack from the underlying action, it would be limited to foundational facts and he would not "be called to express his own opinion that these events constituted a favorable termination of the underlying action in his client's favor."[8]

In light of the "strong interest parties have in representation by counsel of their choice" and "in avoiding the duplicate expense and time-consuming effort involved in replacing counsel already familiar with the case" (see *Smith*, *supra*, 60 Cal.App.4th at p. 580), we conclude the court properly exercised its discretion when it found that, even *if* English does testify in connection with Mack's malicious prosecution action, English's testimony likely would be limited and thus would neither cause Boylan nor the judicial system the requisite detriment to overcome Mack's right to counsel of his choice.

---

[8] Although we offer no opinion on this issue, it is not clear whether the testimony of any witness—expert or otherwise—may be presented on the issue of favorable termination, probable cause and/or malice. (See, e.g., *Sheldon Appel Co. v. Albert & Oliker*, *supra*, 47 Cal.3d at p. 884; Evid. Code, § 801["If a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is: [¶] (a) Related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact; and [¶] (b) Based on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion."].)

DISPOSITION

We affirm the orders denying (1) the respective anti-SLAPP motions of Shannahan and Boylan and (2) Boylan's separate motion to disqualify Mack's counsel of record.  Mack to recover his costs of appeal.


                                                                    BENKE, Acting P. J.

WE CONCUR:


McDONALD, J.


IRION, J.

42